THOMPSON, J.
The state appeals from a judgment which sustained a motion to *40 quash the indictment against the defendant. The charge is that the defendant “did unlawfully, attempt to monopolize a certain part of the trade and commerce within the limits of this state, to wit, the laundry business in the city of New Orleans.”
There are two acts of the Legislature (Acts 86 of 1890 and Act 11 of the Extra Session of 1915) whose purpose was to protect trade and commerce against unlawful restraints, combinations, conspiracies, and monopolies. One of the grounds of the motion to quash is that the charge against the defendant is based on Act 86 of 1890, whereas that act was repealed by Act 11 of 1915. It is admitted that the district attorney had before him the act of 1890 when he prepared the indictment, and this is plainly indicated by the indorsement on the back of the indictment. The language of the indictment, however, follows substantially that of Act 11 of the Extra Session of 1915, and it is to the body of the indictment that we must look to ascertain the crime with which a,defendant is charged, rather than to the indorsement which is no substantive part of the indictment or charge. State v. Pointdexter, 117 La. 380, 41 South. 688; State v. Daniels, 122 La. 261, 47 South. 599.
 There can be no doubt that the act of 1890 was superseded by the act of 1915. The two acts are inconsistent, the one with the other, in that the latter act makes the crime intended to be denounced a relative felony, while the former made the crime only a misdemeanor. Where two criminal statutes are repugnant as to the punishment that may be inflicted, they cannot stand together. State v. Hickman, 127 La. 442, 53 South. 680. Of course, the defendant could not be prosecuted under the repealed statute, but, as the indictment follows the language of the later act, it is sufficient, if it is otherwise legal, and the defendant is brought within its terms.
 Another ground of the motion to quash is that the indictment .is bad for uncertainty, because it does not allege or set out in what manner defendant unlawfully attempted to monopolize the laundry business in the city of New Orleans, or what facts and circumstances constituted said attempts to monopolize. It is true that neither the indictment nor the agreed statement of facts informs us of the relation which the defendant bears to the laundry business of New Orleans, and what interest he has therein, whether as owner, lessee, manager, or agent. Nor does the indictment set out in what manner the defendant attempted to hiring about a monopoly of the laundry business. Section 10 of the Bill of Rights of the Constitution of 1921 plainly provides that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him, and prosecuting officers would do well more carefully to observe this constitutional requirement; but the rule is well settled that, in prosecutions for purely statutory offenses, it is sufficient for the indictment or information to follow the language of the statute or language equivalent to that used in the statute. State v. Bulloch, 151 La. 594, 92 South. 127. And it is another familiar rule of jurisprudence that, if the indictment does not sufficiently set forth the acts charged against the defendant particularly in matters of description, he waives the defect, if he fails to ask for a bill of particulars. State v. Cleary, 152 La. 265, 92 South. 892; and cases there cited.
The motion to quash attacks the constitutionality of Act 86 of 1890, on the ground that said act is repugnant to article 29 of the Constitution of 1879, article 31 of the Constitution of 1898, and section 16 of article 3 of the Constitution of 1921, which provide that every law shall embrace but one object which shall be expressed in its title. The question is of no importance and con *42 cern to the defendant, since he is not prosecuted under the act of 1890, and since that act has been repealed by the act of 1915. We note in defendant’s brief that his learned counsel argue the same constitutional objection against the act of 1915, but we do not find any such attack in the motion to quash, and there has been no assignment of errors filed. But be that as it may, there is a ground set up in the motion which we regard as fatal to the indictment and prosecution against the defendant, and, this being true, it is unnecessary to consider the question of the constitutionality of the act. At all events, the defendant, under the conclusion we have reached, is without interest to raise the question of the constitutionality of the act. State v. Rogers, 148 La. 653, 87 South. 504.
The motion to quash alleges that the indictment and the matters and things therein ' alleged set forth and charge no crime known to the laws of Louisiana; that the laundry business in the city of New Orleans is not trade or-commerce, and is not trade or commerce within the meaning and intendment of those words as used in the statute under which said indictment was drawn.
It is admitted in the statement of facts attached to the motion tó quash:
“That in the laundry business in the city of New Oreleans no article is manufactured or sold, said laundries doing no business other than receiving dirty clothes, laundering them, and returning them, cleansed, to the customer.
“That the operation of washing, drying, starching, dampening, and ironing the laundry is'largely mechanical or by means of steam and machinery designed for the purpose, supplemented by manual labor, performed by men and women.
“All materials used in tfye washing, starching, and ironing operation, such as soap, starch, blueing, and other necessary articles are purchased by the laundry from the manufacturers or dealers.
“The laundry requires the use of a large number of wagons and motor trucks and the services of a large number of drivers to transport the laundry from and to the residences, places of business, ships, hotels, and different agencies in the city.
“The laundries trade or deal with their customers through the truck or wagon drivers who solicit business; paid solicitors employed by the laundries: various agencies established throughout the city and in other towns; and the offices of the different laundries.”
The title of the act is: “To protect trade and commerce against unlawful restraints, combinations, conspiracies and monopolies, and to provide remedies” and penalties “against same.”
The first section of the act relates to antitrust contracts:
“That every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of 'trade or commerce in the state of Louisiana is hereby declared to be illegal.”
“Every person who shall make any such contract, or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor,” etc.
“Sec. 2. That every person who shall monopolize,, or attempt to monopolize, * * * any part of the trade or commerce within the State of Louisiana, shall be deemed guilty,” etc.
“See. 4. That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to léase or sell, or contract for the sale of goods, wares, merchandise^ machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption or resale within this state, or to fix a price charged therefor, or discount from, or rebate upon such price, on the condition, agreement or understanding that the purchaser or lessee thereof shall not use or deal in the goods, wares, merchandise, machinery or other commodities of a competitor or competitors of the vendor or lessor, where the effect of such sale, or contract for sale, or lease, or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.”
It is clear that the charge as set out in the indictment does not bring the defendant within the terms of the first section of the act, for that section relates exclusively to contracts, etc., in restraint of trade. Section 2 does not define what acts shall constitute an attempt to monopolize any trade *44 or commerce, nor what acts shall constitute a monopoly within the intent and purpose óf that section, which is the only section of the act that fixes a penalty for the doing of the things mentioned in the section as unlawful.
We must have recourse, therefore, to section 4 for a definition of “an attempt to monopolize* trade and commerce,” if any such definition is to be found in the act at all. Counsel for the state concede that, if the act of 1915 consisted of section 4 alone, there might be some force in defendant’s contention, but they say that other things are forbidden by the other sections of the act. That is quite true, but search will be 'made in vain to find any other provision of the act that would bring the ease of the defendant within the prohibition of section 2, or connect the laundry business with the things therein mentioned that furnishes a definition of the things sought to be > prohibited and punished therein.
It can hardly be seriously questioned that, if section 2 was the only section in the act which made an “attempt to monopolize, * * * any part of trade or commerce” a crime, the prosecution would fall for the reason already stated. A careful reading of section 4 shows that it does not seek to forbid or to make unlawful the acts and things therein recited when committed by any person; but only such persons as are engaged in commerce and in the course of commerce, etc., are to be brought under the condemnation of the section. And it is only made unlawful for such persons to lease or sell, or to contract for the sale of goods, etc., for use, consumption, or resale, or to fix a price charged therefor on the condition or agreement that the purchaser or lessee shall not use or deal in the goods, etc., of a competitor of the said vendor or lessor, where the effect may be to lessen competition or to create a monopoly.
When we come, therefore, to consider the section referred to in connection with the business of laundry as shown by the statement of facts, there is left no possibility of doubt that such business is utterly and totally foreign to the “trade and commerce” which the lawmakers had in view, and the restraint of which it was the object and purpose of the statute to prevent.
The business of the laundry is not to lease or to sell, nor does a laundry deal in goods, wares, and merchandise, or other commodities. Nor has it anything to do with the fixing of the prices of commodities. In other words, there is absolutely nothing in connection with the business carried on by the laundry, or the method pursued in operating the laundry business, that would bring the laundry within any definition of “trade” or “commerce,” in the sense in which those words are used in the statute, or that would even suggest to the ordinary" mind that such laundry was a concern engaged in trade and commerce. We are unable to conceive of any rule of interpretation by which the terms of the statute can be so broadened or enlarged as to bring the laundry business thereunder.
An examination of the jurisprudence of this "state fails to discover any case dealing with the precise question here involved. The cases cited by the learned counsel for the state from other jurisdictions have no important bearing, and certainly cannot be accepted as controlling. As a rule the cases apply to particular statutes, and the sense in which the words “trade” and “commerce” are used in those cases has no application, and furnishes no aid in determining the instant case. Eor instance, it was said in Geise v. Pennsylvania Fire Insurance Co. (Tex. Civ. App.) 107 S. W. 555:
“In its broad and general sense [‘trade’] covers and embraces all occupations in business, with the possible exception of the learned professions, and those that pertain to t‘he liberal arts and the pursuit of agriculture.”
In State ex rel. Coleman v. Telegraph Co., 75 Kan. 609, 90 Pac. 299:
*46 “Intercourse between private parties by means of telegraphic communications is simply commerce, although they are carried over routes which are post roads.”
In Beall v. Beck, 2 Fed. Cas. No. 1161, it was held that a keeping of a boarding house is of itself a trade. And in one of the cases, In re Pinkney, 47 Kan. 89, 27 Pac. 179, it was remarked that:
“In the broader sense [trade] is any occupation or business carried on for subsistence or profit.”
Surely counsel would not for a moment contend that any such broad and general definitions and use of the terms corild be made to bring the business of a laundry under the terms of the statute, in the absence of any language to be found in the statute that would remotely indicate that it was the purpose of the lawmakers to do so. It might with equal propriety be said, in a general way, as of the telegraph business, or of the boarding house business, or of the insurance business mentioned in the cases cited, that in a certain sense laundering clothes is a trade or a business; but it cannot be so classed in the sense as used in the statute we are dealing with. Nor would the boarding house, the telegraph, or the insurance business, to which counsel would apply the words trade and commerce, come within the terms of said statute.
An interesting case, and doubtless the leading case, where the" court had under discussion the question as to whether the business Of a laundry came within the purview of an anti-trust statute, is the case State ex rel. Moose v. Frank, 114 Ark. 47, 169 S. W. 333, 52 L. R. A. (N. S.) 1149, Ann. Cas. 1916D, 983, cited; by counsel of defendant. The court, in concluding quite a lengthy opinion, said:
“The business of laundering is a mere, serv- , ice done, whether performed by hand or by machinery, and an agreement to regulate 'the price * * * therefor is in1 its last analysis merely an agreement to fix the price of labor, or services, and the Legislature of this state has not made such an agreement unlawful.”
Other cases cited by counsel along the same line, and which we deem it unnecessary to review in this opinion, are Rohlf v. Kasemeier, 140 Iowa, 182, 118 N. W. 276, 23 L. R. A. (N. S.) 1284, 132 Am. St. Rep. 261, 17 Ann. Cas. 750; State ex rel. Star Pub. Co. v. Associated Press, 159 Mo. 410, 60 S. W. 91, 51 L. R. A. 151, 81 Am. St. Rep. 368; Muir v. Samuels, 110 Ky. 605, 62 S. W. 481.
In State v. Fontenot, 112 La. 628, 36 South. 630, it was said:
“Unless an act can be brought within the meaning of the words of the statute, it is not a crime, though it comes within the mischief sought to be remedied by the statute, and is of equal atrocity with the acts enumerated by the statute.”
“Courts may be authorized sometimes to restrain the generality of the terms of a law so as to exclude from its operation exceptional cases, but not to enlarge the terms of a limited law.” State v. Leo, 108 La. 496, 32 South. 447.
In State v. Gaster, 45 La. Ann. 636, 12 South. 739, Mr. Justice Fenner, as the organ of the court, had this to say:
“All crimes in Louisiana are statutory, and there can be no crime which is not defined and denounced by statute. The determination and definition of acts which are punishable as crimes are purely legislative functions, which cannot be delegated to or exercised by the judiciary.”
And in a more recent case, State v. Gardner, 151 La. 874, 92 South. 369, Mr. Justice St. Paul, for the court, quoted with approval from U. S. v. Reese, 92 U. S. 220, 23 L. Ed. 563, as follows:
“It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large.”
Our conclusion is that the laundry business operated in the city of New Orleans, as dis *48 closed by the evidence, is not “trade and commerce,” in the sense said words are used in sections 2 and 4 of Act 11 of the Extra Session of 1915; and that said laundry business was not included within the prohibition of said two sections of said act.
The judgment appealed from is therefore affirmed.
Rehearing denied by WHOLE COURT.
O’NEILL, DAWKINS, and LAND, JJ., dissent from refusal to grant rehearing.