PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARMELO AVILÉS QUIÑONES, Defendant and Appellant.

No. 7276. Argued December 8, 1938.—Decided February 10, 1939.

*E. Báez García* for appellant.   *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Carmelo Avilés Quiñones was charged with a violation of Section 7 of Act No. 14 of July 8, 1936, as amended by Act No. 95 of May 12, 1937 (Laws of 1937, p. 231).   He pleaded guilty and the District Court of Mayagüez sentenced him to six months in jail.   He appealed to this Court and alleges that the lower court committed three errors.   The first of the alleged errors reads as follows:

"The District Court of Mayagüez erred in sentencing defendant, inasmuch as the complaint in this case does not set forth sufficient facts to constitute a crime in Puerto Rico."

The complaint, the sufficiency of which is the basis of the first alleged error, states as follows:

"That said defendant, Carmelo Avilés Quiñones, on or about August 14, 1937, at Mayagüez, P. R., which is a part of the judicial

district of Mayagüez, P. R., unlawfully, voluntarily and maliciously had in his possession a firearm, to wit: a revolver, trademark 'Crucero', caliber 38, having no number, without having declared or registered it in an affidavit to the Insular Chief of Police of the district of Mayagüez, which is the district where defendant resides, nor in any other district, giving under oath, in duplicate, his full name, address, occupation, color, signature and finger-prints of his thumbs, the caliber, class, model and name of the manufacturer of said arm possessed by him, which declaration was not filed by defendant.''

Appellant sustains that the complaint does not allege a public offense because in describing the revolver which allegedly was not declared, it is not averred that the length of the barrel does not exceed twelve inches.

Let us examine the act which was allegedly violated. The definition of the crime is found in Section 7, which reads as follows:

''Section 7.—Every person who, for any reason, has *any firearm* in his possession when this Act takes effect, shall be obliged so to declare, in writing, not later than the thirtieth day *after the day on which is made the last publication of the edicts provided for in Section 9 of this Act,* to the chief of the Insular Police of the district where he resides. Likewise, every person obtaining in any manner the control or possession of any firearm after this Act is in force shall be obliged so to declare, in writing, to the chief of the Insular Police of the district where he resides. The declaration of the firearm shall be made through an affidavit, in duplicate, containing his full name, address, occupation, color, and his signature, or his thumb marks, if he does not know how to sign, and the caliber, kind, model and factory number of the firearm he possesses. If the firearm has no factory number or such number is illegible, the possessor shall have his full name engraved on the steel of the back part of the butt of the firearm, stating this fact in his affidavit. The district chief of the Insular Police of the domicile of the declarant shall deliver to the latter a record of said act; and he shall send the original of the affidavit to the Chief of the Insular Police of Puerto Rico within the five (5) days following the date on which it was delivered to him, keeping the duplicate in his official file.

''*After the expiration of the term for the registration of firearms in the above-prescribed manner,* the fact of possessing a firearm the

possession or control of which has been obtained without complying with the provisions of this Act, or of failing to declare it as provided in this section, shall be prima facie evidence that such firearm has been obtained, is possessed, or is carried, illegally. Every person who possesses a firearm or has it under his control and loses it or finds that it has disappeared, shall immediately give written notice thereof to the chief of police of the district where the person whose firearm has been lost or has disappeared resides. The fact that the firearm used in the perpetration of a crime is declared and registered in the name of a certain person does not establish against him any presumption of guilt for, or connection with, the crime committed, and the judges shall take this provision into account, and shall instruct the jurors that they should take it into account, in considering and deciding cases in which the use of a firearm is in controversy." (Italics ours).

Section 7 above set forth imposes the duty of declaring any firearm (*arma de fuego*) and Section 1 defines what a firearm is under said Act. Said Section reads as follows:

"Section 1.—The word *firearms* as used in this Act means every pistol or revolver *the barrel of which is twelve inches long, or less;* any shotgun the barrel of which is twenty-four inches long, or less, and any rifle the barrel of which is fifteen inches long, or less."

The generally accepted rule to determine the sufficiency of a complaint when the definition of an alleged offense is subject to exceptions, is as follows: If the exception has been included in the definition of the offense in such a manner that a complaint which omitted it would not state the different elements of the offense with sufficient accuracy and certainty, in that case it is indispensable to allege the exception in the complaint, that is to say, that the facts be stated which would tend to show that the case against defendant is not included within any other exception of the law. If on the contrary the exception appears in any other section of the law and the definition of the offense is so independent from the exception that the crime can be described with certainty and accuracy, without it being necessary to deny the exception, in that case the latter is considered a matter of

defense and as such should be alleged and proved by the defendant. *Cook* v. *U.S.*, 84 U.S. 168, 173, Bishop's New Crim. Procedure, sections 513 (subdivision 5) and 639 (subdivision 5); 1 Chitty, Criminal Law, 283*b*, 284; *McHenry* v. *State*, 80 S.W. (2) 655; and *People* v. *Rosenstadt & Waller, Inc.*, 28 P.R.R. 896.

The facts in the case of *Weare* v. *U.S.*, 1 F. (2d) 617, decided by the Circuit Court of Appeals for the Eighth Circuit, are very similar to those in the case at bar. The Federal Narcotic Act, approved December 17, 1914, generally known as the Harrison Act, in its first section provides that all persons who shall give, etc., . . . opium or coca leaves, or any other compound, salt, derivative or preparation of the same, must register . . . and the same section further provides that it shall be illegal for any person who according to said Act should register, to give opium, coca leaves or any other compound, etc., without having previously registered and paid the special tax which is imposed by said section.

Section 6 provides that the Harrison Act shall not be construed as applicable to the sale, distribution, etc., of preparations which do not contain more than two grains of opium or more than ¼ grain of morphine.

Earle C. Weare was accused of a violation of the Harrison Act and it was alleged that he had maliciously and unlawfully given to a certain Sittiden certain derivatives and preparations of opium, to wit, morphine, without having registered in the office of the collector of internal revenue and without having paid the special tax provided by law. He was convicted and sentenced by the District Court of the United States for the District of Minnesota, and when he appealed to the Circuit Court he alleged for the first time that the complaint did not aver sufficient facts to constitute a crime, because the same did not allege that the preparation contained more than ¼ of a grain of morphine; in other

words, that the complaint was insufficient because it did **not** deny exception found in Section 6 of the Act.

The court, after citing the rule hereinbefore set forth, declared that the exceptions found in Section 6 of the Act do not form a part of the definition of the crime and that therefore they constitute matter of defense which should be alleged and proved by defendant.

The case at bar is identical in principle to that of Weare, supra. The only difference is that the exception in our case appears in Section 1 and the definition of the crime in Section 7, while in the Weare case the crime is defined in Section 1 and the exception appears in Section 6, but this mere physical difference does not affect in any manner the interpretation of the Act as was held in the Weare case.

Examining the complaint in this case in the light of these principles, we must conclude that it complies with the law.

The modern tendency in jurisprudence is to simplify procedure eliminating all the formality of the Common Law, which was as unnecessary as useless and which far from helping constituted a hindrance to the good administration of justice. *Whiting* v. *State*, 14 Conn. 487, 490, 36 Am. Dec. 499; *State* v. *Moran,* 99 Conn. 115, 36 A.L.R. 862; *Brinkman* v. *Drolesbaugh* (Ohio) L.R.A. 1918–F 1132, 1135. This is the reason why the federal jurisdictions as well as the state jurisdictions have simplified in a like manner the complaints in such form that their sufficiency is not determined by the fact that they might have been made with more or less accuracy or certainty. It is sufficient that they set forth the different elements of the offense alleged, describing it with such certainty that the accused will be sufficiently informed of the offense of which he will have to defend himself and will be able to allege former jeopardy for the same offense in case he is later accused of the same violation. *Hanger* v. *U.S.*, 285 U.S. 427, 76 L. ed. 861; *State* v. *Lassotovich,* 162 Md. 147, 81 A.L.R. 69; *State* v. *Roy,* 40 N.M. 397, 110 A.L.R. 1; and note in 11 L.R.A. 530.

However, if defendant did not desire to answer the complaint or go to trial without knowing the length of the revolver, he could have applied for a bill of particulars which in all probability he would have obtained, but far from this he preferred to plead guilty, and by so doing he not only waived the bill of particulars but admitted the truth of the facts well pleaded in the complaint. *State* v. *McClellan,* 155 La. 37, 31 A.L.R. 527; *Pueblo* v. *Andréu,* 23 P.R.R. 698; *People* v. *Cabassa,* 30 P.R.R. 3.

Appellant alleges that his exception to the sufficiency of the complaint is based on the case of *People* v. *Cortés,* 24 P.R.R. 195. That case referred to rape, which Section 255 of the Penal Code defines as follows:

"Section 255. Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under any of the following circumstances:

"1. Where the female is under the age of fourteen years.

" . . . . . . . . . .

This Court said that even though the victim was a minor less than fourteen years old and could not legally marry, it was necessary to allege that she was not the wife of the accused. In so holding this Court applied the generally accepted rule which provides that when an exception is included in a statute in such a manner that it is a part of the definition of a crime, the exception should be denied in the complaint. But the case at bar is different. Here the statute involved defines the words it uses after the description of the offense and the complaint strictly follows the language of the statute.

In our opinion the first alleged error does not exist.

The second alleged error states as follows:

"The court committed error in finding defendant guilty, because accepting as true the facts alleged in the complaint, these do not constitute a public offense in Puerto Rico."

. . In arguing this allegation of error appellant says:

. (a) That not registering or declaring a revolver does not constitute an offense because section 7 in its first paragraph imposes the duty to register the arm, but does not state that failure to register constitutes an offense, and therefore, in his opinion the statute, in so far as the declaration or registration of the arm is concerned, it is merely directory and not mandatory.

(b) Because the second paragraph of said section provides that possession of an arm without declaring it shall be prima facie evidence that a person possesses it illegally, and

(c) Because said Section 7, in imposing the obligation to declare all firearms acquired after the law takes effect, does not fix a term within which said declaration may be made.

"Whether the language of a statute is imperative or merely permissive depends on the intention as disclosed in the nature of the act and in the context. Although the words of a statute are merely permissive, directory, or enabling, they may nevertheless have the force of words of command where the power or duty to which they relate is for the advancement of public justice or the security and protection of public or private rights." 25 R.C.L. 767.

The object of the law is to create a registry for firearms. The registry or declaration of an arm is essential to the object of the law, for if the declaration were voluntary the act would have no purpose and there is no doubt that this Act is one of public policy and furthers public justice. Therefore, the provision in regard to the registry or declaration of arms is mandatory and not permissive.

It is true that Section 7 does not state expressly that the failure to register an arm constitutes an offense, but it is true also that it imposes the obligation to register it and that Section 10 provides:

"Section 10.—The violation of the provisions of this Act shall be considered as a misdemeanor, and the person declared guilty thereof shall be punished by imprisonment in jail for not less than

six (6) months nor more than two (2) years, except when viola-tion relates to the purchase or sale of contraband firearms, which shall be punished as provided in Section 6 hereof."

The fact that the second paragraph of Section 7 provides that possessing an arm without declaring it shall be prima facie evidence that it is possessed illegally, does not imply that the non-compliance with this duty imposed by the Act does not constitute an offense when, as we have seen, the first paragraph of Section 7 imposes the obligation of reg-istering it and Section 10 contains the corresponding penal sanction. The object of the second paragraph of Section 7 is to lay the burden of proof on defendant from whom an unregistered arm is seized to show that he possesses it law-fully.

The Act does not set forth a term during which the fire-arms acquired after this Act is in force may be declared because said term is unnecessary. They are bound to declare the arms at the time they acquire them. Otherwise, after the statute went into effect, there would always be persons possessing arms without declaring them because the term for declaration had not expired, and this would defeat the purpose of the Act.

The second alleged error does not exist either.

Let us examine the third and last, which reads as follows:

"The court erred in punishing the accused because the law in question is unconstitutional and was approved in violation of the Organic Act of Puerto Rico."

This alleged error is discussed by appellant under two different aspects:

(a) Under the theory that the Act discriminates in favor of those persons who acquired their arms before the law entered into effect and against those who acquired them afterwards; and

(b) Because it was approved in violation of paragraph 9 of Section 34 of the Organic Act of Puerto Rico.

Paragraph 1 of Section 2 of our Organic Act provides that no law shall be approved in Puerto Rico which will deny to any person on the Island the equal protection of the laws.

The constitutional clause on "the equal protection of law" contained in our Organic Act is an exact copy of that which appears in the Fourteenth Amendment to the Federal Constitution. This clause originated immediately after the Civil War and its purpose was to protect the colored race against the outrages and injustices to which it was subject in the States where slavery had existed. Referring to the origin of this clause, the Supreme Court of the United States, in one of its most famous decisions, states:

"In the light of the history of these amendments, and the pervading purpose of them, which we have already discussed, it is not difficult to give a meaning to this clause. The existence of laws in the States where the newly emancipated negroes resided, which discriminated with gross injustice and hardship against them as a class, was the evil to be remedied by this clause, and by it such laws are forbidden." Slaughter-House Cases, 16 Wall. 36, 81.

But that clause, which at first was applied to those cases in which a discrimination was alleged against the colored race, by judicial interpretation was made of general application and wherever an inequality exists without reasonable basis for it, the clause of equal protection of the laws is there to stop any injustice or discrimination. As we have suggested, not all inequalities violate this constitutional clause.

The constitutional provision of equal protection of the laws does not mean, as apparently appellant's attorney seems to believe, that the Legislature is precluded from making a classification within the law and applying to each classification or group a different rule if such classifications are not arbitrary.

The Supreme Court of the United States has resumed the rules to determine if an act violates the equal protection of the laws clause in the following manner:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78.

The difference established by the act between those who possessed arms before the law went into effect and those who acquired them afterwards, is perfectly just and reasonable. The former acquired them when there was no law which obliged them to declare them. They might have been absent when the law first went into effect or they might not be able to find them immediately if they had them put away or had lent them, or any other circumstance might exist which would prevent them from complying with the law immediately upon its approval, and if they were not given a term they would be punished for violating a law with which they had not had a reasonable opportunity to comply. The others, those who did not possess arms when the law went into effect, were in a different situation, since, if for any circumstance they could not comply with the obligation to declare them, they could postpone acquiring them for an appropriate occasion. Also, if as we have said before, these latter were given a term to register the arms, the term would begin to run from the date the arm was acquired, and as different persons are

constantly acquiring arms, the result would be that there would always be a certain number of arms not registered, which would make the ·law inefficient. The classification is evidently reasonable. It rests on a reasonable basis. Therefore the Act does not violate the constitutional clause.

Let us now consider the second question.

Section 13 of Act No. 14 of 1936 reads as follows:

"Section 13.—It is hereby declared that this Act is of an experimental character and, therefore, its provisions shall be in force only for the period of two years and a day from and after the date on which it takes effect; and it is likewise declared that this Act, being of an urgent and necessary character, shall take effect immediately after its approval."

The section above set forth was amended by Act No. 95 of 1937 so as to make the Act permanent. The appellant urges that the Act of 1936 should have been reenacted thereby complying with the provision of paragraph 9 of section 34 of the Organic Act, which reads as follows:

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length."

The purpose of that constitutional clause is to avoid confusions so that in order to read a section or article of a law it should not be necessary to examine two or more volumes of laws in which a certain law may be spread. For this reason, in interpreting said clause, it has been sustained that in amending an act it is sufficient to. set out the statute as amended without setting out the statute as it was before it was amended. 59 C.J. 880. But when, as in the present case, all the sections of the Act of 1936, with the exception of the three which were amended by Act No. 95 of 1937, to wit, sections 7, 9 and 13, are not changed in any manner, no practical object is reached in reenacting the whole law which is found in the volume of Laws of 1936, special session.

In the case of *Houston & T. C. Ry. Co.* v. *State,* 39 S'.W. 390, a similar question was raised.

The State of Texas granted certain lands to the Houston & T. C. Ry. Co. for a period of ten years, and after this period was over an act was passed extending it for ten years more. In the amending act the amended act was not copied. It was alleged that the amending act was unconstitutional, because it did not comply with a constitutional clause of the State of Texas, identical to that which the appellant now invokes. The Supreme Court of Texas upheld the constitutionality of the act.

In our opinion the third error alleged by the appellant does not exist and the Act is constitutional. Therefore, the judgment appealed from is affirmed.