EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARMELO AVILÉS QUIÑONES, acusado y apelante.

Núm. 7276.—*Sometido:* Diciembre 8, 1938. *Resuelto:* Febrero 10, 1939.

*Enrique Báez García*, abogado del apelante; *R. A. Gómez, Fiscal*, abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Acusado Carmelo Avilés Quiñones de infringir el artículo 7 de la Ley número 14 de 8 de julio de 1936 (Leyes de ese año, (2) pág. 129), según fué enmendado por la número 95 de 12 de mayo de 1937 (Leyes de 1936–37, pág. 240), hizo alegación de culpable y la Corte de Distrito de Mayagüez lo sentenció a cumplir seis meses de cárcel. Apeló para ante este tribunal y en apoyo del recurso imputa a la corte sentenciadora la comisión de tres errores. El primero de los errores señalados dice así:

"La Corte de Distrito de Mayagüez cometió error al condenar al acusado, toda vez que la acusación en el presente caso no alega hechos suficientes constitutivos de delito público en Puerto Rico."

La acusación, cuya suficiencia es motivo del primer señalamiento de error, dice así:

"El referido acusado, Carmelo Avilés Quiñones, allá en o por el día 14 de agosto de 1937 y en Mayagüez, P. R., que forma parte del distrito judicial de Mayagüez, P. R., ilegal, voluntaria y maliciosamente, tenía en su poder y posesión un arma de fuego, a saber: un revólver marca 'Crucero', calibre 38, sin número, y sin haberlo declarado y registrado haciendo una declaración por escrito al Jefe de la Policía Insular del Distrito de Mayagüez, que es el distrito donde reside el acusado, ni en ningún otro distrito, haciendo constar bajo juramento en duplicado su nombre completo, dirección, ocupación, color, su firma y huellas digitales de sus pulgares, el calibre, clase, modelo y nombre de fábrica de dicha arma por él poseída al declararla, declaración que no hizo el acusado."

Sostiene el apelante que la acusación no imputa un delito público, porque al describir el revólver que se alega no fué declarado, no se expresa que la longitud de su cañón no excede de 12 pulgadas.

Veamos ahora cuál es la ley que se alega infringida. La definición del delito la encontramos en el artículo 7, que dice así:

"Artículo 7. Toda persona que tenga en su poder, por cualquier concepto, *cualquier arma de fuego,* en la fecha en que entre en vigor esta Ley, tiene la obligación de declararlo así por escrito al jefe de la policía insular del distrito donde resida, a no más tardar el trigésimo día *después de aquél en que se haga la última publicación de los edictos que se ordenan en el artículo 9 de esta Ley.* Igualmente, toda persona que obtenga el dominio o posesión de cualquier arma de fuego, en cualquier forma, después de entrar en vigor esta Ley, tiene la obligación de declararlo así por escrito al jefe de la policía insular del distrito donde reside. La declaración del arma se hará mediante una declaración jurada en duplicado conteniendo su nombre completo, dirección, ocupación, color, su firma o huellas digitales de sus pulgares si no supiere firmar, y el calibre, clase, modelo y número de fábrica del arma de fuego que posea. Si el arma no tuviere número de fábrica, o éste apareciere ilegible, el poseedor hará grabar su nombre completo sobre el acero de la parte trasera del mango del arma, y así lo hará constar en su declaración. El jefe de distrito de la policía insular del domicilio del declarante entregará a éste una constancia de dicho acto, y enviará el original de la declaración al Jefe de la Policía Insular de Puerto Rico, dentro de los cinco (5) días siguientes a la fecha en que le sea entregada, y conservará el duplicado en su archivo oficial.

"*Después de vencido el término durante el cual podrá procederse a la inscripción de las armas de fuego en la forma que se prescribe inmediatamente antes,* el hecho de poseer un arma de fuego cuya posesión o dominio ha sido obtenido sin ajustarse a las disposiciones de esta Ley, o no hubiere sido declarado de acuerdo con las prescripciones de este artículo será evidencia prima facie de que el arma de fuego se ha obtenido, se posee o se transporta ilgalmente. Toda persona que poseyere o tuviere bajo su dominio un arma de fuego y la perdiere o se le desapareciere, lo notificará por escrito inmediatamente al jefe de la policía de distrito en que resida la persona a quien se le ha perdido o desaparecido el arma. El hecho de que el arma usada en la perpetración de un delito estuviere declarada e inscrita a nombre de determinada persona, no establece contra ésta presunción alguna de culpabilidad de, o conexión con, el delito cometido, y los jueces tendrán en cuenta, e instruirán a los jurados que deberán tener en cuenta esta disposición, al considerar y resolver casos en que el uso de un arma de fuego esté en controversia."

El artículo 7 precedentemente transcrito impone el deber de declarar cualquier arma de fuego (*firearm*) y el artículo

1 define lo que debe entenderse por arma de fuego a los efectos de la citada ley. Dicho artículo dice así:

"Artículo 1.—La palabra 'arma de fuego', tal y como se usa en esta Ley, significa toda pistola o revólver, cuyo cañón mida hasta doce pulgadas de longitud; cualquier escopeta de municiones cuyo cañón mida hasta veinticuatro pulgadas de longitud, y cualquier rifle cuyo cañón mida hasta quince pulgadas de longitud." (Ley número 14 de 8 de julio de 1936, (2) pág. 129.)

La regla universalmente aceptada para determinar la suficiencia de una acusación cuando la definición del delito imputado está sujeta a excepciones, es la siguiente: Si la excepción ha sido incorporada a la definición del delito de manera tan inseparable que una acusación que la omitiera dejaría de exponer los distintos elementos del delito con suficiente exactitud y certeza, en ese caso es indispensable que en la acusación se niegue la excepción, es decir, que se expongan hechos tendentes a demostrar que el caso del acusado no se halla comprendido en ninguna de las excepciones de la ley. Si por el contrario la excepción se halla expuesta en cualquier otro artículo de la ley y el lenguaje que define el delito es tan independiente de la excepción que puede describirse el delito con certeza y exactitud sin necesidad de negar la excepción, en ese caso ésta se considera materia de defensa y como tal debe ser alegada y probada por el acusado. *U. S.* v. *Cook,* 84 U. S. 168, 173, Bishop's New Crim. Procedure, secciones 513, subdivisión 5, y 639, subdivisión 5; 1 Chitty, Criminal Law, 283*b,* 284; *McHenry* v. *State,* 80 S. W. (2d) 655; y *El Pueblo* v. *Rosenstadt & Waller, Inc.,* 28 D.P.R. 952.

El caso de *Weare* v. *U. S.,* 1 F. (2d) 617, resuelto por la Corte de Circuito de Apelaciones para el Octavo Circuito presenta una situación de hechos muy similar al caso que nos ocupa. La Ley Federal contra narcóticos, aprobada el 17 de diciembre de 1914, generalmente conocida por Ley Harrison, en su artículo primero prescribe que toda persona que diere, etc., . . . opio u hojas de coca, o cualquier com-

puesto, sal, derivado o preparación de los mismos, deberá registrarse o inscribirse . . . y el mismo artículo sigue disponiendo que será ilegal que cualquier persona que de acuerdo con dicha ley debe registrarse o inscribirse, dé opio, hojas de coca o cualquier otro compuesto, etc., sin antes haberse registrado y satisfecho la contribución especial que en el mismo artículo se impone.

La sección 6 dispone que la Ley Harrison no se interpretará en el sentido de aplicarse a la venta, distribución, etc., de preparaciones que no contengan más de dos granos de opio o más de ¼ de grano de morfina.

Se acusó a Earle C. Weare de infracción a la Ley Harrison, imputándole que maliciosa e ilegalmente había dado a un tal Sittiden ciertos derivados y preparaciones de opio, a saber, morfina, sin haberse registrado en la oficina del colector de rentas internas y sin haber pagado la contribución especial provista por la ley. Fué convicto y sentenciado por la Corte de Distrito de Estados Unidos para el Distrito de Minnesota, y al apelar para ante la Corte de Circuito alegó por primera vez que la acusación no aducía hechos constitutivos de delito, porque en la misma no se alegaba que la preparación en cuestión no contenía más de ¼ de grano de morfina, en otras palabras, que la acusación era insuficiente por no haber negado la excepción contenida en la sección 6 de la ley.

La corte, después de citar la regla anteriormente enunciada en esta opinión, declaró que las excepciones contenidas en la sección 6 de la ley no forman parte de la definición del delito y que por consiguiente constituyen materia de defensa, cuya alegación y prueba incumben al acusado.

El caso que nos ocupa es idéntico en principio al de Weare, supra. La única diferencia es que la excepción en nuestro caso aparece en el artículo 1ro. y la definición del delito en el 7º., mientras que en el de Weare el delito se define en el artículo 1ro. y la excepción aparece en el 6º., pero esta diferencia puramente física no afecta en manera alguna

la interpretación de la ley, como se dice en el caso de Weare.

Examinada la acusación de este caso a la luz de estos principios, forzoso es concluir que cumple con los requisitos legales.

La tendencia moderna en la jurisprudencia es simplificar el procedimiento, eliminando todo aquel formalismo de la ley común, tan innecesario como inútil, que lejos de auxiliar constituía un estorbo a la buena administración de la justicia. *Whiting* v. *State,* 14 Conn. 487, 490, 36 Am. Dec. 499; *State* v. *Moran,* 99 Conn. 115, 36 A. L. R. 862; *Brinkman* v. *Drolesbaugh* (Ohio) L.R.A. 1918–F 1132, 1135. De ahí que tanto en las jurisdicciones federales como en las estatales se hayan simplificado en igual forma las acusaciones, de tal manera que la suficiencia de ellas no la determina el hecho de que pudieran haberse redactado con más o menos precisión o certeza. Basta que expongan los distintos elementos del delito que se intenta imputar, describiéndolo con tal certeza que informe suficientemente al acusado del cargo de que se ha de defender y le permita alegar la exposición anterior por el mismo delito (*former jeopardy*) en caso de que posteriormente se intentase perseguirlo por la misma infracción. *Hagner* v. *U. S.,* 285 U. S. 427, 76 L. Ed. 861; *State* v. *Lassotovich,* 162 Md. 147, 81 A.L.R. 69; *State* v. *Roy,* 40 N.M. 397, 110 A.L.R. 1, y la monografía en 11 L.R.A. 530.

No obstante, si el acusado no deseaba contestar la acusación o entrar en juicio sin conocer la longitud del revólver en cuestión, bien pudo solicitar ese detalle mediante un pliego de particulares, que con toda seguridad hubiera obtenido; pero lejos de ello prefirió declarse culpable y al así hacerlo, no sólo renunció (*waived*) al pliego de particulares, si que admitió la verdad de los hechos bien alegados en la acusación. *State* v. *McClellan,* 155 La.* 37, 31 A.L.R. 527; *Pueblo* v. *Andréu,* 23 D.P.R. 751; *Pueblo* v. *Cabassa,* 30 D.P.R. 3, 6.

Alega el apelante que su impugnación a la suficiencia de la acusación está basada en lo resuelto en el caso de *El Pue-*

*blo* v. *Cortés,* 24 D.P.R. 208. Allí se trataba de un delito de violación, que el artículo 255 del Código Penal define así:

"Art. 255.—Se comete violación, yaciendo con una mujer que no fuere la propia, en cualquiera de los casos siguientes:
"1. Si la mujer fuere menor de catorce años.
". . . . . . . . . ."

Se dijo por este tribunal que a pesar de que la ofendida era menor de catorce años y no podía legalmente contraer matrimonio era necesario alegar que no era la esposa del acusado. En ese caso el Tribunal no hizo otra cosa que aplicar la regla universalmente aceptada, dispositiva de que cuando una excepción se incorpora de tal modo a un estatuto que forma parte de la definición del delito, la excepción debe ser negada en la acusación. Pero el caso que nos ocupa es distinto. En éste el estatuto envuelto define los términos que usa después en la descripción del delito y la acusación sigue estrictamente el lenguaje del estatuto.

A nuestro juicio no existe el primer error señalado por el apelante.

El segundo señalamiento de error dice así:

"La Corte cometió error al condenar al acusado, porque aceptando como ciertos los hechos alegados, éstos no constituyen un delito público en Puerto Rico."

Argumentando el apelante este señalamiento de error dice:

(*a*) Que el dejar de registrar o declarar un revólver no constituye delito, porque el artículo 7 antes transcrito, en su primer párrafo, impone la obligación de registrar el arma, pero no expresa que el dejar de registrarla constituye delito, por lo que, según él, el estatuto, en lo que se refiere al registro o declaración, es meramente admonitivo y no preceptivo;

(*b*) Porque el segundo párrafo del citado artículo dispone que el poseer un arma sin declararla será evidencia prima facie de que se posee ilegalmente; y

(*c*) Porque el mismo artículo 7, al imponer la obligación de declarar las armas de fuego que se adquieran después de entrar en vigor la ley, no especifica dentro de qué tiempo debe hacerse tal declaración.

"Si el lenguaje del estatuto es imperativo o meramente admonitivo depende del propósito legislativo que pueda inferirse tanto del contexto como de la naturaleza de la ley. Aunque las palabras de un estatuto sean meramente permisivas, admonitivas o directivas, se consideran como preceptivas cuando la facultad o deber a que ellas se refieren tiene por objeto promover la justicia pública o la seguridad y protección de derechos públicos o privados." 25 R.C.L. 767.

El fin que persigue la ley es crear un registro de armas de fuego. El registrar o declarar el arma es esencialísimo a los efectos de la ley, pues si la declaración fuese potestativa la ley carecería de finalidad, y no hay duda de que esta ley es una de orden público (*public policy*) y propende a la justicia pública. Por consiguiente, la disposición sobre el registro o declaración del arma es preceptivo y no admonitivo.

Es verdad que el artículo 7 no dice expresamente que el dejar de registrar el arma constituye un delito, pero no es menos cierto que impone la obligación de registrarla y que el artículo 10 prescribe:

"Artículo 10.—Las infracciones a las disposiciones de esta Ley serán consideradas como un delito menos grave (*misdemeanor*) y la persona que fuere declarada convicta del mismo será castigada con pena de cárcel no menor de seis (6) meses ni mayor de dos (2) años, excepto en cuanto se relaciona a la compraventa de armas de contrabando, que se castigará según lo dispuesto en el artículo 6."

El hecho de que el segundo párrafo del artículo 7 prescriba que el poseer un arma sin declararla será evidencia prima facie de que se posee ilegalmente, no implica que el incumplimiento de ese deber que impone la ley no constituya delito, cuando, como hemos visto, el primer párrafo del artículo 7 impone la obligación de registrarla y el artículo 10 contiene la sanción penal correspondiente. El objeto del se-

gundo párrafo del artículo 7 es imponer el peso de la prueba al acusado a quien se le ocupe un arma sin registrar, al cual incumbe demostrar que la posee legalmente.

No señala la ley un término para declarar las armas a aquellas personas que las adquieran después de su vigencia, porque ese plazo es innecesario. Su obligación es declararlas al tiempo de adquirirlas. De otro modo, después de estar en vigor el estatuto habría siempre personas poseyendo armas sin declararlas, por no haber vencido el plazo que se le concediera para ello, lo cual frustraría el saludable propósito de la ley.

No existe tampoco el segundo de los errores señalados. ■ Pasemos ahora al tercero y último, que dice así:

"La Corte cometió error al castigar al acusado porque la ley que se alega infringida es anticonstitucional y fué aprobada en violación de las disposiciones de la Carta Orgánica de Puerto Rico."

Este señalamiento de error lo discute el apelante bajo dos aspectos distintos:

(a) Bajo la teoría de que la ley establece un discrimen a favor de aquellas personas que adquirieron las armas antes de entrar en vigor la ley y en contra de las que las adquirieran después; y

(b) Porque fué aprobada en violación del párrafo 9 del artículo 34 de la Carta Orgánica de Puerto Rico.

El párrafo 1 del artículo 2 de nuestra Ley Orgánica dispone que no se pondrá en vigor en Puerto Rico ninguna ley que negare a una persona de la Isla la protección igual de las leyes.

La cláusula constitucional sobre "igual protección de las leyes" contenida en nuestra Ley Orgánica es una copia exacta de la que aparece en la enmienda décimocuarta de la Constitución Federal. Esta cláusula se originó inmediatamente después de la Guerra Civil y tuvo por objeto proteger a la raza de color contra los atropellos e injusticias a que era sometida en los Estados donde había existido la escla-

vitud. Refiriéndose al origen de esta cláusula dice la Corte Suprema de Estados Unidos en una de sus más célebres decisiones:

"A la luz de la historia de estas enmiendas y del propósito que las inspira, a que nos hemos referido, no es difícil interpretar esta cláusula. La existencia de leyes en los Estados donde los negros recién emancipados residían, que discriminaban injusta y opresivamente contra ellos como miembros de una clase, fué el mal que trató de remediarse por esta cláusula y a virtud de la misma las leyes de esa índole están prohibidas." Slaughter House Cases, 16 Wall. 36, 81.

Pero esa cláusula que al principio se aplicó a aquellos casos en que se alegaba un discrimen contra la raza de color, por interpretación judicial se hizo de general aplicación y dondequiera que se establece una desigualdad sin que exista una base razonable para ello, allí está la cláusula sobre igual protección de las leyes, para impedir la arbitrariedad y el discrimen. Como hemos insinuado, no toda desigualdad infringe esta cláusula constitucional.

El precepto constitucional sobre igual protección de las leyes no significa, como parece entenderlo la representación del apelante, que la Asamblea Legislativa esté impedida de hacer clasificaciones dentro de una ley y aplicar a cada clasificación o grupo una regla distinta, siempre que tales clasificaciones no sean arbitrarias.

La Corte Suprema de Estados Unidos ha resumido las reglas para determinar si una ley ofende la cláusula constitucional sobre igual protección de las leyes, en la siguiente forma:

"1. La cláusula sobre igual protección de las leyes contenida en la enmienda décimocuarta no priva a los Estados de la facultad de establecer clasificaciones en la adopción de leyes de orden público (*public policy*), sino que por el contrario permite el ejercicio de una amplia discreción en ese sentido impidiendo las clasificaciones solamente cuando se han hecho sin una base razonable y por consiguiente resultan puramente arbitrarias.

"2. Una clasificación que descanse en una base razonable no infringe esta cláusula constitucional simplemente porque no se haya

hecho con una precisión matemática o porque en la práctica resulte en alguna desigualdad (*inequality*).

"3. Cuando se impugna la clasificación, si puede concebirse cualquier estado de hechos que la justifique, se presumirá que tal estado de hechos existió en la fecha de la aprobación de la ley.

"4. El que impugne la clasificación contenida en una ley tiene el peso de la prueba para demostrar que no descansa sobre una base razonable y que es esencialmente arbitraria." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78.

La diferencia que establece la ley entre los que poseían armas antes de su vigencia. y los que las adquirieren después, es perfectamente justa y razonable. Los primeros las adquirieron cuando no existía ley alguna que los obligase a declararlas. Podían hallarse ausentes al empezar a regir la ley, no encontrarlas de momento si las tenían guardadas o prestadas, o podía existir cualquier otra circunstancia que les impidiese cumplir con la ley inmediatamente después de su aprobación, y si no se les daba un plazo para ello, se les castigaría por violar una ley que no habían tenido una oportunidad razonable de cumplir. Los otros, los que ·no las tenían al tiempo de empezar a regir la ley, estaban en otras condiciones, pues si por cualquier circunstancia no podían cumplir con el requisito de declararlas, podían posponer su adquisición para una ocasión apropiada. Además, si como decimos antes, se les concediese un plazo a estos últimos para registrar las armas, éste empezaría a correr desde la fecha de la adquisición, y como constantemente se están adquiriendo armas por distintas personas, resultaría que siempre existiría un número de ellas sin registrar, lo cual haría ineficaz la ley. La clasificación evidentemente no es arbitraria; descansa sobre una base razonable. Por consiguiente, la ley no infringe la cláusula constitucional.

Pasemos ahora al segundo fundamento de inconstitucionalidad.

El artículo 13 de la Ley núm. 14 de 1936 ((2) página 129) decía así:

"Art. 13. Por la presente se declara que esta ley es de carácter experimental y por tanto sus disposiciones estarán en vigor solamente por el período de dos años y un día a partir de la fecha en que entre en vigor."

La sección antes transcrita fué enmendada por la Ley número 95 de 1937 (Leyes de 1936–37, pág. 240) en el sentido de hacer la ley permanente. Sostiene el apelante que debió redactarse de nuevo toda la ley de 1936, cumpliendo así con lo prescrito en el párrafo 9 del artículo 34 de la Ley Orgánica, que dice así:

"Ninguna ley será restablecida o enmendada, ni se dará mayor alcance a sus disposiciones . . . . haciendo referencia a su título solamente, sino que toda la parte de ella que sea restablecida, enmendada, extendida, o conferida, será decretada nuevamente y publicada en su totalidad."

El objeto de esa cláusula constitucional es evitar confusiones, impidiendo que para conocer un artículo o sección de una ley haya que examinar dos o más tomos de leyes entre los cuales se halle fraccionado un determinado precepto legal. Por esa razón, interpretando esa cláusula se ha sostenido que es suficiente con que al enmendarse una ley, la disposición legal, tal y como ha sido enmendada, se transcriba literalmente en la ley enmendatoria. 59 Corpus Juris 880. Pero cuando, como en el presente caso, todos los artículos de la Ley de 1936, con excepción de los tres que fueron enmendados por la Ley núm. 95 de 1937, a saber, el 7, el 9 y el 13, no son alterados en forma alguna, ningún fin práctico se consigue transcribiendo de nuevo toda ley, que aparece en el tomo de leyes de 1936, sesión extraordinaria.

En el caso de *Houston & T. C. Ry. Co.* v. *State,* 39 S.W. 390, se suscitó una cuestión similar a la que ahora levanta el apelante.

El Estado de Tejas hizo cierta concesión de tierras a la Houston & T. C. Ry. Co. por un período de diez años, y después de expirado dicho término se pasó una ley extendiéndolo a diez años más. En la ley enmendatoria no se

transcribió la ley enmendada. Se alegó que la ley enmendatoria era inconstitucional por no cumplir con una cláusula constitucional del Estado de Tejas, igual a la que ahora invoca el apelante. La Corte Suprema de Tejas sostuvo la constitucionalidad de la ley.

*Entendiendo como entendemos que tampoco existe el tercer error señalado por el apelante y que la ley es constitucional, procede confirmar la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.

El Juez Asociado Sr. Wolf. está conforme con el resultado. *