O’NIELL, Chief Justice
 

 (dissenting).
 

 My opinion is that the refusal of the State Board of Commerce and Industry to allow the exemption claimed by Kohler’s Snowite Laundry & Cleaners, Inc., was an arbitrary ruling. I use the word
 
 arbitrary
 
 not in the ugly sense of being wilfully or intentionally unfair, but in the legal sense in which the word is defined by the lexicographers, as determined not by any provision in the constitutional amendment itself but by the will of the board and without a substantial reason. Webster’s New International Dictionary, verbo
 
 arbitrary;
 
 Ballentine’s Law Dictionary; Black’s Law Dictionary, Third Edition; 3 Words and Phrases, Permanent Edition, pp. 874-876.
 

 If this constitutional amendment, now under consideration, must be construed to give to the Board of Commerce and Industry unlimited authority to grant the tax exemption to one applicant and to deny it to another, without having any fixed standards or conditions to determine whether the exemption should be granted or denied in any given case, and if a disappointed applicant has no right to a judicial review of an unfavorable ruling of the board except in the case of a wilful or intentional discrimination and injustice to the complainant, the constitutional
 
 *641
 
 amendment is obviously violative of the equal protection clause in the Fourteenth Amendment of the Constitution of the United States. I express no opinion as to whether this constitutional amendment is violative of the equal protection clause because of its conferring unlimited discretion upon the State Board of Commerce and Industry and because of the want of fixed standards or conditions to control the board in determining whether an applicant for the tax exemption is or is not entitled to the exemption. Neither party to this suit pleads that the constitutional amendment violates the equal protection clause. The reason for that is that each party is invoking or depending upon the constitutional amendment. But I respectfully submit that we should not give the amendment a construction which will make it essentially violative of the equal protection clause.
 

 A state statute, or a provision in a state constitution, conferring unlimited discretion upon a state agency in the matter of conferring or withholding a special privilege, must afford any interested person the right to a judicial review of an-unfavorable exercise of the judgment of the state agency; otherwise the statute, or the provision in the constitution, is violative of the equal protection clause in the Fourteenth Amendment of the Constitution of the United States.
 

 This court has had occasion to review statutes conferring upon a state board or agency unlimited authority either to grant or to withhold a special privilege, according to the judgment of the board or agency, without being controlled by any fixed standards or conditions on which the applicant’s right to have the benefit of the privilege shall depend; and the court has held that a provision in such a statute allowing any interested person the right to a judicial review of the judgment of the board or agency saves the statute from being violative of the equal protection clause in the Fourteenth Amendment of the Constitution of the United States. In the case of State ex rel. Porterie, Atty. Gen., v. Grace, Register of State Land Office, et al., 184 La. 443, 166 So. 133, 136, the court had under consideration Act No. 9 of the Extra Session of 1928, purporting to vest in the Governor and the Register of the State Land Office “ ‘full, final and plenary authority ’ * * * to settle and finally determine, by agreement with the holders of mineral leases from the state * * * all matters, questions or controversies arising as to the interpretation of such leases and the performance of the covenants, conditions, obligations and stipulations thereof.” And the court held that the statute was valid because the rulings of the Governor and the Register of the Land Office were subject to review and reversal by the courts. On that subject (184 La. loc. cit. 454, 166 So. loc. cit. 137) the court said:
 

 “The exercise of the authority given by Act No. 9 of the Extra Session of 1928 is subject to the ‘judicial power’ of the courts and to investigation by the courts in any instance where a party having an interest sets forth a just cause for complaint. For that reason Act No. 9 of the Extra Session of 1928 is not violative of section 1 of article 7 of the Constitution, investing the judicial power in the courts.”
 

 
 *643
 
 By the same token Act No. 9 of the Extra Session of 1928 would not have been held violative of the equal protection clause in the Fourteenth Amendment of the Constitution of the United States if that attack had been made upon the statute.
 

 In a later case, Hunter Co. v. McHugh, 202 La. 97, 117, 11 So.2d 495, 501; Id., 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. -, we. referred with approval to the doctrine of the decision in State ex rel. Porterie, Atty. Gen., v. Grace, Register of the Land Office, and declared that the decision was applicable also to the equal protection clause in the Fourteenth Amendment of the Constitution of the United States,— thus:
 

 “These provisions, allowing any interested person the right to a judicial review of the rules, regulations and orders of the Commissioner of Conservation, are sufficient protection against abuse of his discretion, and are, of themselves, according to the ruling in State ex rel. Porterie, Attorney General, v. Grace, Register of the State Land Office, sufficient to insure the statute against being adjudged violative of the due process clause, or the equal protection clause, in the Fourteenth Amendment of the Constitution of the United States.”
 

 It is conceded that the original rejection of the application for the tax exemption, on October 5, 1938, and the second rejection of the application, on June 29, 1939, were founded upon a misunderstanding of the law on the subject. Thereafter, as stated in the majority opinion, the board reconsidered the application and again rejected it on September 19, 1940, but gave no reason at that time for the rejection. After another reconsideration the application was rejected finally on April 15, 1941, on the ground that the applicant’s business was “locally competitive”, and that therefore to grant the tax exemption would give the applicant an “unfair preferential” — or advantage — over the other local industries engaged in the same type of business, who did not enjoy the benefit of the tax exemption. If that reason for rejecting the application should be adopted by the board as a fixed rule the tax exemption could not be granted to any new industry in a city or town where a similar industry was already established, — no matter how the established industry might be abusing its monopoly — and no matter how applicable
 
 might be
 
 the
 
 saying
 
 that competition is the life of trade. In this instance the board does not contend that Kohler’s Snowite Laundry and Cleaners could provoke such competition in the laundry or cleaning business in New Orleans as to be destructive of the business. That is the ground on which the Public Service Commission may refuse to grant a certificate of convenience and necessity to a competing carrier. But the reason for that is that in many instances public utilities cannot operate without having a monopoly of the business locally.
 

 I agree with the judge of the district court that the reason given by the board for its final rejection of the relator’s application,- — -that the business of the applicant was “locally competitive”, — is unreasonable and arbitrary, in the sense in which the word
 
 arbitrary
 
 is used in
 
 legal
 
 
 *645
 
 phrases. On the next day after this suit was filed the board granted to other applicants tax exemptions to the extent of $50,000,000 in favor of institutions employing altogether only 2,376 persons. That was at the rate of more than $21,000 .of tax exemption for every individual who was given employment. The application of Kohler’s Snowite Laundry and Cleaners was for a tax exemption of only $55,000 for a new business enterprise employing more than 200 persons. That exemption, if allowed, would be at the rate of only $275 — as compared with the $21,000 of tax exemption for every person obtaining employment. These figures are verified by the testimony of a member who was for several years chairman of the board. Besides, the evidence shows that this new industry cannot survive without the benefit of the tax exemption during its infancy. The organizers were justified, by the past performances of the board, in assuring the subscribers for the capital stock that this new industry would have the same benefit of tax exemption that was accorded to other new industries in the same business.
 

 There is no unfair discrimination in allowing to an infant industry a tax exemption not enjoyed by an established industry engaged in a similar business. The very theory of such an exemption is to foster the infant industry until it can sustain itself. The principal asset of a laundry business, like that of a newspaper and other industries, is the list of patrons on its delivery routes; and it takes time for such an enterprise to enlarge its list of patrons to the point of making the business profitable. Kohler’s Snowite Laundry & Cleaners commenced business in January, 1939, with physical assets costing $89,521.11,— $20,788 whereof was paid for the building and lot, and $68,733.11 for machinery and equipment. The payroll amounted to $96,-194.34 in 1939, amounted to $109,376.12 in 1940, and amounted to $118,000 in 1941, according to the Social Security records. The assessment of the property for ad valorem taxes is $125,000. The taxes in dispute amount approximately to $4,000 per year, and the undisputed evidence is that $4,000 a year represents the difference between success and failure of this new enterprise. The audits show that, notwithstanding the business was managed with close economy, it lost $909.37 in 1939, lost $1,886.47 in 1940, and lost $906.36 in 1941. The gross business for the first of those years was $171,706.30, for the next year $198,456.57, and for the third year $205,970.55. During that time the salary of the president, who was the principal stockholder and general manager, was only $55 per week. With regard to this new enterprise being “locally competitive”, the undisputed evidence is that the principal competitor is what is referred to in the testimony as the “laundry trust”, which controls three-fourths of the laundry business in New Orleans, and which is described as a combination of 10 or 12 laundries that joined hands in the year 1923 to monopolize the laundry business in New Orleans. The records of this court, — specifically, in the case of State v. McClellan, 155 La. 37, 98 So. 748, 31 A.L.R. 527,- show that the organizer of this laundry combine was indicted in 1923 for an alleged violation of Act No. 11 of the Extra Session of 1915,
 
 *647
 
 the second section of which act makes it unlawful for any person to monopolize or attempt to monopolize any part of the trade or commerce within the State of Louisiana. The indictment was quashed by the judge of the criminal district court and on appeal by the district attorney this court affirmed the judgment on the ground that the laundry business did not consist of leasing or selling anything, or of dealing in goods, wares or merchandise, and had nothing to do with fixing the price of commodities, and hence was neither “trade” nor “commerce”, in the meaning of the statute. Three of us — members of the court as then constituted — dissented from the ruling that the laundry business was neither trade nor commerce within the meaning of the act of 1915, condemning combinations in restraint of trade or commerce.
 

 I have referred to the evidence on the subject of competition in the laundry business in New Orleans merely to demonstrate that it would be
 
 arbitrary
 
 for the State Board of Commerce and Industry to adopt the so-called “locally competitive” rule as an inflexible rule, applicable to any and all new enterprises that come in competition with an establishment already engaged in a similar business, — and that if the so-called “locally competitive” rule is to be applied only in the instances where its application would be appropriate, this case does not present such an instance.
 

 I concur in the opinion of the judge of the district court that in the circumstances of this case the rejection of the application for the tax exemption on the ground merely that the business is “locally competitive” is an unjust discrimination, and is in the legal sense of the term
 
 arbitrary.
 
 Hence my opinion that the judgment of the district court should be affirmed.