(December 16, 1916.)

STATE, Respondent, v. H. D. CURTIS, Appellant.

[161 Pac. 578.]

CRIMINAL LAW—INFORMATION—PROOF—VARIANCE—ORDER OF PROOF—REASONABLENESS OF DEFENDANT'S EXPLANATION OF HIS ACTS A QUESTION OF FACT—INSTRUCTIONS.

1. Where an information against several defendants alleges in the last clause that one of them is a fugitive from justice, and upon the trial of one of them the whole information is read to the jury, and the reading of the information as a whole is objected to by counsel for the defendant who is being tried, but without specifying any objection to the reading of the clause alleging that his codefendant is a fugitive from justice, the latter question cannot be raised for the first time on appeal.

2. Where in a criminal case against two defendants, one of whom is a fugitive from justice, the jury is justified in concluding

Points Decided.

from all the evidence that the defendant on trial was a confederate of the other, then the acts of the other committed in pursuance of the criminal design are binding on the defendant upon trial, and the order in which the proof was admitted is not material, the question being one of sufficiency of proof rather than order of proof.

3. Where an information in a criminal case charges the offense of presenting for payment certain false claims, to wit, bonds, and refers to the bonds as false and fraudulent, but states in detail facts showing that the offense really consists in presenting for payment genuine bonds as the basis of a false claim, and such allegations are substantiated by the proof, the defendant is not prejudiced by any inaccuracy in designating the offense, and a judgment convicting him of the offense which the pleaded and proven facts show to have been committed will not be disturbed. (*State* v. *Altwatter*, 29 Ida. 107, 157 Pac. 256, cited and followed.)

4. *Held*, that the evidence in this case is sufficient to establish the fact of ownership of the bonds which are the subject of the prosecution, in Blaine county.

5. Where one accused of the commission of a crime attempts to explain the fact of his possession of the fruits of the crime, the question of the reasonableness of such explanation is a question of fact for the jury, and the appellate court is not justified in substituting its opinion for that of the jury, unless it finds that the defendant's explanation under all of the circumstances was so clearly satisfactory that it was unreasonable for the jury not to give it credence.

6. The trial court in a criminal case is warranted in refusing to give to the jury an instruction requested on behalf of defendant, where it appears that the matter embraced in such requested instruction is fairly and fully covered by some other instruction given by the court.

7. In a criminal case the instructions given by the court to the jury must be read and construed as a whole.

8. *Held*, that no error of law which would justify a reversal appears in the record of this case, and that the evidence is sufficient to support the verdict under the law applicable.

[As to when accused may testify as to motive or intent, see note in 21 Am. St. 318.]

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. James R. Bothwell, Judge.

H. D. Curtis was convicted of the crime of presenting for payment to the county treasurer of Blaine county ·certain false and ·fraudulent claims, and appeals. *Affirmed.*

Sullivan, Sullivan & Baker, for Appellant.

The state must show *prima facie* case of conspiracy independent of declarations of co-conspirator. Therefore, the acts and declarations of co-conspirator cannot be considered for the purpose of proving the conspiracy itself. (8 Cyc. 683; *State v. Walker,* 124 Iowa, 414, 100 N. W. 354; *State v. Miller,* 35 Kan. 328, 10 Pac. 865; *State v. Crofford,* 121 Iowa, 395, 96 N. W. 889; *Smith v. State,* 46 Tex. Cr. 267, 108 Am. St. 991, 81 S. W. 936.)

An action based upon presenting an affidavit which is genuine in execution but false in statements is separate and distinct, and requires different allegations than an action which is based upon presenting a forged or counterfeited affidavit. (*United States v. Staats,* 49 U. S. (8 How.) 12 L. ed. 979.)

There is a great distinction between an affidavit false in its making and one false in its statements; the indictment should clearly set forth wherein the falsity is claimed to exist so that the defendant can properly prepare for trial. (*United States v. Corbin,* 11 Fed. 238.)

The prosecution must prove both the false affidavit and the false claim as alleged. (*United States v. Miskell,* 15 Fed. 369.)

The case of *United States v. Coggin,* 3 Fed. 492, 9 Biss. 416, is also instructive as to the presentation of a false claim upon a genuine certificate and the presentation of a false claim upon a false or fraudulent certificate.

If the indictment charged a genuine writing, the prosecution could not then prove a false writing, and likewise if it charged a false writing, it could not prove a genuine writing as the basis of the false claim. (*Dimmick v. United States,* 116 Fed. 825, 54 C. C. A. 329.)

Where the defendant gives a reasonable explanation of his possession and he is corroborated by other witnesses, who

are not impeached in any way, and said explanation of possession is not contradicted, evidence is insufficient to sustain the verdict and judgment of conviction. (*State v. Seymour,* 7 Ida. 257, 61 Pac. 1033; *State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034.)

"If the explanatory evidence creates a reasonable doubt in the minds of the jurors that he stole the property, he should be acquitted. It is not absolutely requisite that the accused should prove that his possession was honest. It is sufficient to acquit him if he gives a natural, reasonable and probable explanation of how he acquired possession which the prosecution does not show to be false." (Underhill on Crim. Ev., sec. 301.)

J. H. Peterson, Atty. Genl., D. A. Dunning and Herbert Wing, Assts. to the Atty. Genl., and P. K. Perkins, Pros. Atty., for Respondent.

The order of proof in the matter of establishing the conspiracy is within the discretion of the court. (6 Am. Dig., Dec. Ed., 569; *People v. Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370; *State v. McIntosh,* 109 Iowa, 209, 80 N. W. 349.)

The felony with which the defendant was charged was the presentment of a false claim, and the receipt of money thereon is in no way essential to the accomplishment of the criminal act. (*State v. Adams,* 10 Ida. 591, 79 Pac. 398.)

"A genuine instrument containing a false statement of facts, used in support of a claim, the party knowing it to be false, and using it with intent to defraud, presents a case not distinguishable in principle, or in turpitude, or in its mischievous effects, from one in which every part of the instrument is fabricated." (*United States v. Staats,* 49 U. S. (8 How.) 12 L. ed. 979.)

While it is true that the information in this case erroneously designates the offense, examination of the information indicates that the charge is correctly stated. (*State v. Altwatter,* 29 Ida. 107, 157 Pac. 256.)

A variance within the meaning of the term as applied to criminal law refers to a disagreement between the allegations

in the information and the proof, with reference to some matter which is legally essential to the charge. (*State v. Crean,* 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603.)

McCARTHY, District Judge.—This case is appealed from the district court of the fourth judicial district, for Lincoln county. The defendant was jointly charged with L. A. Duvall, W. F. Horne and H. R. Plughoff, with the crime of presenting for payment to the treasurer of Blaine county certain false and fraudulent claims. The information alleges that for some time prior to December 18, 1914, certain bonds and coupons were in the possession, for safekeeping, of the Hailey National Bank of Hailey, Idaho, and were taken from the custody of said bank by the defendants on or about December 18, 1914; that the bonds had never been issued by the said county of Blaine to any person or persons, and that the defendants had no interest or claim in said bonds; that the defendants, with intent to defraud the county of Blaine, on or about December 18, 1914, at the said county of Blaine, in the state of Idaho, presented these bonds for payment to the then treasurer of said Blaine county. In several places the information also refers to said bonds as false and fraudulent. The defendant Curtis demanded and was granted a change of venue to Lincoln county, and a separate trial. Upon his trial the jury found him guilty. Upon this verdict the court rendered judgment that the defendant is guilty of presenting false and fraudulent claims to the treasurer of Blaine county, Idaho, and that he be punished therefor by imprisonment in the state prison of the state of Idaho for not less than 18 months nor more than 5 years. From this judgment the defendant appeals to this court upon all questions of law and fact. The defendant specifies certain errors of law which he claims occurred upon the trial, and also contends that the evidence is insufficient to support the verdict of the jury.

The first point relied upon by appellant is that the trial court erred in permitting the clerk to read the last clause in the information, which stated that the codefendant, Horne, was a fugitive from justice. The statement in the informa-

tion that Horne was a fugitive from justice was a proper allegation as against Horne himself. (Rev. Codes, sec. 7662.) In all felony cases the information must be read to the jury upon the trial. (Rev. Codes, sec. 7855.) The only objection made by the defendant's counsel was an objection to the reading of the information at all. This was obviously not a sound objection. If there was any merit in the point that the last clause should not have been read upon the trial of the defendant Curtis, it should have been raised by an objection to the reading of that clause. The judge properly overruled the objection to the reading of the information. No proper objection having been made to raise the point that the last clause should not be read, the point, if any, is waived.

The second point is that the court erred in admitting evidence of acts of the defendant Horne prior to proof of a conspiracy. If from all the evidence in the case the jury were justified in concluding, as it did, that the defendant Curtis was a confederate of the defendant Horne, then the acts of Horne, committed in pursuance of the criminal design, would be binding on the defendant Curtis. The question of the order in which the proof was admitted would not then be controlling. The question for this court to decide is now one of the sufficiency of the proof rather than of the order of the proof. If the court finds that the whole of the evidence is sufficient to connect Curtis with Horne, then the act of Horne in cashing the bonds is binding on Curtis, whether the court erred in passing on the order of proof or not.

The next point is a claim of variance between the information and the proof. The information is drawn under Rev. Codes, sec. 6385:

"Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, town, city, ward, or village board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of a felony."

It is claimed that the information charges the defendant with presenting for payment certain false writings, to wit,

bonds, and that the proof shows the presentment of genuine bonds as the basis of a false claim. The preliminary part of the information charges the defendants formally with presenting false and fraudulent claims. It then goes on to plead the facts in regard to the bonds with great particularity, stating that the bonds were regularly issued and executed but not delivered, and that the defendants had no claim to or interest in them, but that they presented them for payment. Although pleading facts which show that the bonds themselves were regularly executed, the information refers to them in several places as false and fraudulent. If the information had charged the defendants with presenting false writings and stopped there, the proof that the writings were genuine but that the claim based upon them was false in that delivery was necessary to make them valid, and that they had never been delivered, would have raised a serious question of variance. But those are not the facts in the present case. The information charges the defendants with presenting a false claim. It then goes on to state how they did it. The only mistake of the pleader, if any, is in referring to the bonds as false writings. This mistake could not mislead the defendant to his prejudice. He was bound to know that the charge against him was making the false claim based upon the bonds. The requisites of an information are the same as those for an indictment. (Rev. Codes, sec. 7657.) It must contain a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended. (Rev. Codes, sec. 7677.) It must be direct and certain as regards the offense charged and the particular circumstances of the offense charged, when they are necessary to constitute a complete offense. (Rev. Codes, sec. 7679.) The information in this case measures up to these standards. In view of the particular facts pleaded, the allegation that the bonds were false, if regarded as inaccurate, may be treated as surplusage. This court has held that where the information incorrectly names an offense, but states special facts showing what the offense really is, the defendant is not prejudiced by the mis-

take in designating the offense, and a judgment convicting him of the offense which the facts pleaded constitute will not be disturbed. (*State v. Altwatter, ante,* p. 107, 157 Pac. 256.) So, in this case, the facts pleaded in the information constitute the offense of presenting false claims for payment, and that is the offense of which the jury found the defendant guilty. If the evidence supports such finding, it is sufficient.

The next point is that the evidence is insufficient to warrant a conviction. It is first contended that the evidence is not sufficient to prove that Blaine county was the owner of the bonds in question. The material allegation of the information in this regard is that the bonds were ready to be issued and delivered, but had never been issued or delivered by said Blaine county to any person or persons, and that the defendants then and there had no interest or claim whatever therein. We think the evidence in the record is sufficient to prove this allegation, as the jury found.

The next contention is that the evidence is insufficient to connect the defendant Curtis with the alleged offense. The defendant is connected with the transaction, first, by his delivery of the bonds to Horne, and, secondly, by the delivery of $1,000 to him by Horne, and his receipt of the same. The delivery of the bonds to Horne was a necessary step in the commission of the offense. In determining the question of whether that delivery was an innocent act or was committed with a guilty intent, the fact that Horne later handed the defendant Curtis $1,000, and that Curtis received the same, for which there was no reason except the delivery of the bonds, is of great significance. From it a reasonable inference may be drawn that there had been an understanding between Curtis and Horne. If not, Horne's act was a very rash one. If he attempted to bribe an innocent man, he would be subjecting himself to the danger of instant exposure. Unexplained, or in the absence of a reasonable explanation, these facts would certainly justify a conviction. The defendant attempted to explain his possession of the $1,000 by stating that although he at once connected it with the bond transaction, he did not mean to keep it, but wanted to

see his lawyer, Mr. L. L. Sullivan, before deciding what to do. The money was delivered to him on January 18, 1914. The evidence shows that shortly after receiving the money he tried to get into communication with his lawyer, and followed that by other attempts, but did not succeed in doing so until January 31st. On January 30th, after learning that Mr. Sullivan would be in Hailey the next day, the defendant told Mr. Perkins, the prosecuting attorney of Blaine county, that they would then want to see him about the bond matter. On January 31st, he showed Mr. Ensign, the cashier of the bank of which he was president, a package and told him he wanted him to know he had it. At the same time he told him about delivering the bonds to Horne. He did not tell him at that time that it was the package which contained the $1,000, but we think from all the evidence that it was the package referred to. On January 31st, after consulting with his lawyer, Mr. L. L. Sullivan, they called for Mr. Perkins and explained to him what had occurred. On January 23, 1915, a check drawn by the county treasurer of Blaine county on the Hailey National Bank, of which defendant was president, in favor of the First National Bank of Shoshone, Idaho, for $4,995, came to the Hailey National Bank, but payment on it was stopped by Mr. Ensign, the cashier, on the order of the county treasurer. This check was introduced in evidence upon the trial as state's exhibit "A–2." During his cross-examination, the following question was asked the defendant:

"Q. Now, when that check came into your bank for payment and the payment was stopped, you knew at that time that the check was in payment of part of the coupons which had been delivered by you to Mr. Horne?" (This question referred to the check, state's exhibit "A–2.")

The defendant answered, "Mr. Ensign told me that later on, about the check, and I suspicioned that." He does not say just when it was that his suspicions were aroused, but the jury would be justified in believing that it was before January 30th or January 31st, the dates when he made a partial disclosure to Mr. Ensign and a disclosure to the

prosecuting attorney. This check incident, however, occurred after he had first tried to get into communication with Mr. L. L. Sullivan, his attorney. Mr. Baker, an associate of the law firm of Sullivan and Sullivan, at Hailey, and Mr. L. L. Sullivan, corroborated Curtis to the effect that he tried to get into communication with Mr. Sullivan on a business matter. The evidence also shows that as soon as he had consulted with Mr. L. L. Sullivan, he called in the prosecuting attorney and made a statement to him. The trial judge told the jury that the reasonableness of the defendant's explanation of his possession of the $1,000 was for it to decide, in instructions which we think were fair to the defendant. The jury found that the explanation was not a reasonable one. The question is whether his consulting his lawyer and making the disclosure after such consultation raises a reasonable doubt. The act of Curtis in trying to get into communication with his lawyer was not necessarily that of an honest man. It might be that of a dishonest man who became frightened by the thought of the possible consequences of his participating in the crime, and who wanted to see his lawyer in order to know what to do. So, also, the mere fact that he made a disclosure under the circumstances shown in the record does not necessarily prove that he was an innocent man. The jury evidently found that the explanation was not a reasonable one. We are not prepared to say that this conclusion of the jury was erroneous.

In *State v. Seymour,* 7 Ida. 257, 61 Pac. 1033, this court held that where a reasonable explanation of possession of stolen property is given and there is no conflict of evidence in regard thereto, and the witness is not impeached, the jury should have acquitted. In that case the defendant's statement that he bought the horse was corroborated by another apparently disinterested witness. In this case the defendant is corroborated by witnesses Sullivan and Baker only to the extent of proving that he wanted to see his lawyer after receiving the money. This fact does not of itself prove either guilt or innocence. It is a question of reasonable inference. The jury evidently found that a reasonable inference of

innocence could not be drawn from that fact so as to overcome the inference of guilt which was drawn from his delivery of the bonds to Horne and Horne's stealthily paying him $1,000 of the proceeds of the bonds, which would be about one-fourth of the total amount obtained, and his receipt of the same. It is true that the state must prove the guilt of a defendant beyond a reasonable doubt. That is a question in the first instance for the jury, which sees the witnesses and hears the testimony. In a case where the question is whether the defendant's explanation of his possession of the fruits of a crime is reasonable, this court is not justified in substituting its opinion for that of the jury unless it finds that the defendant's explanation was so clearly satisfactory that it was unreasonable of the jury to refuse to give it credence. From all of the evidence, we cannot so hold in this case.

The last point is in regard to the instructions. The defendant complains that certain requested instructions should have been given. In each case we find that the request was amply and fairly covered by some other instructions given by the court. Counsel often request several instructions of the same purport, with slightly different shades of meaning, for the sake of argumentative effect. It would be undue emphasis for the court to give several instructions to the same effect on the same point. It is sufficient if the point is clearly and fairly explained in a single instruction where that is possible. It is contended that instruction No. 7, given by the court, is erroneous in that it does not contain an explanation of the element of intent to defraud. However, the rule is elementary that the instructions given must be read and construed as a whole, and that no one instruction shall be singled out as stating all the law of the case. In instruction No. 8 we find that the court said that the state must prove an intent to defraud on the part of the defendant, and the same matter is specifically treated in other instructions. We do not assume that the jury regarded simply instruction No. 7, but that it read, considered and applied all the instructions, as it was its duty to do.

Our general conclusion is that we find no error of law in this record which would justify a reversal, and that the evidence is sufficient to support the verdict, under the law applicable. The judgment of conviction is therefore affirmed.

Budge and Morgan, JJ., concur.

Petition for rehearing denied.