(No. 6759. May 4, 1940.)

STATE, Respondent, v. O. A. HINTZ, Appellant.

[102 Pac. (2d) 639.]

Black & Black, for Appellant.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Respondent.

MORGAN, J.—The charging part of the information in this case is as follows:

"That the said O. A. Hintz, on or about the 15th day of January, 1939, and before the filing of this information at Pocatello, in the County of Bannock, State of Idaho, at a point on Highway No. 30 about three and one-half miles south of Pocatello, Bannock County, Idaho, then and there being, did then and there knowingly, wilfully, unlawfully and feloniously, at a point about three and one-half miles south of the city of Pocatello in the county of Bannock, in the State of Idaho, and at a point about two hundred and fifty feet north of the Owl Club on the 15th day of January,

1939, at about 3:15 A. M. of said day, and did then and there while engaged and occupied in running a motor vehicle, to-wit: A one and one-half ton Chevrolet truck, on the public highway of the State of Idaho, County of Bannock, and particularly on U. S. Highway No. 30 at the point above described, did unlawfully and feloniously park and cause to be parked said Chevrolet truck upon said highway at the point above described upon the pavement and main lane of traffic and without any lights thereon, and did then and there unlawfully and negligently and carelessly and without due caution by then and there failing to drive said motor vehicle off to the side of the road and left the same parked in such a manner and without lights as to endanger the lives and limbs of persons traveling upon and along said highway. That by reason of said negligent acts aforementioned and the lack of due caution of said defendant, O. A. Hintz, the said defendant did then and there by reason of leaving said truck parked upon the highway and without lights cause a collision with a car driven by R. E. Hopkins in which Margaret Louise Gates was a passenger and that by reason of said negligent parking of said truck upon said highway as aforesaid, said Margaret Louise Gates received mortal wounds from the effects of which she, the said Margaret Louise Gates, died within a few hours after the collision, on said 15th day of January, 1939, and that by reason of said acts as aforesaid the said O. A. Hintz, the defendant, did, in the manner and form aforesaid unlawfully and feloniously and without malice, kill the said Margaret Louise Gates and commit the crime of involuntary manslaughter.''

Appellant demurred to the information. The demurrer was overruled and he plead not guilty. Trial resulted in verdict and judgment of conviction of guilty of involuntary manslaughter. He moved in arrest of judgment and his motion was overruled. He moved for a new trial, which was denied. He appealed from the judgment of conviction and from the order denying a new trial.

Appellant assigns as error the orders overruling his demurrer to the information, overruling his motion in arrest of judgment, and denying him a new trial. He also contends the evidence is insufficient to sustain the verdict and judg-

ment. The conclusion we have reached with respect to the last mentioned contention makes a discussion of the other assignments unnecessary.

The evidence shows, without dispute, that appellant was employed by Kewanee Coal Company, in Pocatello, to deliver coal to its customers; that he owned the truck, involved in the accident here under consideration, and used it in the course of his employment; that he roomed at the home of Mrs. Mattie Hawkins; that Saturday night, January 14, 1939, after his day's work was done, he and Mrs. Hawkins took a ride in the truck, from Pocatello toward Inkom; that when they got near Inkom, about thirteen or fourteen miles from Pocatello, they turned back along the highway and stopped at the Owl Club; that they reached the Owl Club and parked the truck in front of it at about twelve o'clock, midnight; that they remained at the Owl Club until near three o'clock A. M., when he and Mrs. Hawkins got into the truck and started back to Pocatello. Appellant was driving. When he got in the truck he turned on the lights and they were in good working condition. When he had proceeded about six hundred feet along the highway from the Owl Club, toward Pocatello, the engine began to sputter and jerk and stopped. He repeatedly stepped on the starter, in an effort to start the engine, but was unable to do so. He got out and felt the wires, distributor and spark plugs. All were in place and apparently in good working order. He again tried the starter but the engine would not keep going—just started and stopped. After numerous efforts to start the engine, appellant and Mrs. Hawkins attempted to push the truck from the paved portion of the highway and they testified they succeeded in removing it entirely from the pavement. Appellant testified that after the truck was removed from the pavement he again tried to start it but was unable to do so; that from ten to fifteen minutes elapsed during which he was attempting to start the truck and in removing it from the highway. There is conflict in the evidence as to whether the truck's lights were burning, during that time, and as to its exact position on the highway. Witnesses who passed the truck testified the lights were not burning and some of them tes-

tified it was in the right-hand traffic lane of the highway, its left wheels being near the center line.

Dr. J. E. Bresee, a dentist residing in Pocatello, was returning from a dance at Inkom. The car in which he rodé, in the front seat with the driver, was the last to pass the truck before the wreck occurred. He was a witness, called by the state, and, on direct examination, testified:

"Well, when he was coming in, just this side of the Owl Club a short distance, I noticed there was a truck parked partially on the highway there, and as we came out of the lights of the Owl Club I noticed there was another person either by the truck, or here by this place there,—there was a point it was kind of hard to see along there, these shadows following the car, that is, from the lights from the Owl Club, and we just about reached that point; it seemed like this truck was setting there, and we had to swerve a little bit to get by it.

Q. "What part of the road was it setting on?

A. "It was on the right hand side of the road.

Q. "Now, what part of the right hand side?

A. "Well, I imagine the truck, as far as I could tell, was about half on the highway and half off."

The evidence is undisputed that the paved portion of the highway, at this point, is twenty feet wide and that the shoulders, on each side of it are seven feet wide, making an improved road thirty-four feet in width. It also shows that for a considerable distance on each side of the point of collision the highway is straight and rises, from the Owl Club, northward toward Pocatello, a foot and two and a quarter inches in six hundred ten feet, and that the rise is gradual. While the truck was standing on the highway, as above described, a car containing four people who were returning to Pocatello from the dance at Inkom, traveling at a rate of from forty to fifty miles an hour, collided with it, resulting in the injury and death of Margaret Louise Gates, one of its occupants.

The testimony of the driver of the car shows his lights were in good condition and were burning; that he was looking straight ahead and did not see the truck until he was within about forty feet of it; that he swerved to miss it but was

unable to do so. The record shows that, except for the lights and shadows, as testified to by Dr. Bresee, there was nothing to interfere with the view of the truck and, while the night was dark, the weather was not stormy.

█ Idaho Code Annotated, section 48–524, contains the following:

"a. No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway.

. . .

"c. The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

█ The facts of this case bring it squarely within the provisions of section 48–524, subsection c. The truck became and was disabled, while on the highway, to an extent that rendered it impossible to avoid stopping, and leaving it, in the position in which it was when struck by the automobile.

The information charges appellant with negligence by failing to drive the truck off the road, and by leaving it parked in such manner, without lights, as to endanger the lives of persons traveling along the highway.

█ █ Section 17–1106 defines the crime of which appellant was accused as follows:

█

"Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds:

. . .

"2. Involuntary—in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, burglary, or mayhem; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

That section must be read and construed together with sec. 17–114, which provides:

"In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence."

In *State v. McMahan*, 57 Ida. 240, 256, 65 Pac. (2d) 156, 162, we said:

"In order to properly construe that section, full force and effect must be given to the qualifying word 'criminal,' used in connection with the word 'negligence.' "

In the McMahan case, we further said:

"The term 'criminal negligence,' as used in that section, does not mean merely the failure to exercise ordinary care, or that degree of care which an ordinarily prudent person would exercise under like circumstances. It means gross negligence. It is such negligence as amounts to a reckless disregard of consequences and of the rights of others."

See, also, *State v. Taylor*, 59 Ida. 724, 87 Pac. (2d) 454; *People v. Driggs*, 111 Cal. App. 42, 295 Pac. 51.

The undisputed evidence shows that while appellant was traveling in his truck along the highway the engine failed to function and the truck stopped; that he did everything in his power to start it and, failing in this, to remove it from the pavement. There is no evidence of criminal negligence on his part.

The judgment is reversed with direction to dismiss the action.

Ailshie, C. J., and Budge, Givens and Holden, JJ., concur.