309 P.2d 211

The STATE of Idaho, Plaintiff-Respondent,

v.

John DAVIDSON, Defendant-Appellant.

No. 8394.

Supreme Court of Idaho.

Feb. 12, 1957.

Rehearing Denied April 15, 1957.

W. H. Langroise, W. E. Sullivan, Jess
B. Hawley, Jr., Boise, for appellant.

Graydon W. Smith, Atty. Gen., J. R. Smead, Asst. Atty. Gen., Blaine F. Evans, Pros. Atty., Eugene C. Thomas, Dep. Pros. Atty., Boise, for respondent.

SMITH, Justice.

Respondent, by an amended information, accused appellant of the crime of involuntary manslaughter, committed March 19, 1955, by driving a motor vehicle in an unlawful, reckless, careless and negligent manner, and at an excessive rate of speed, at and into an intersection of certain streets in the City of Boise, into and against one Anna Louise Bunten, who thereby received injuries which resulted in her death, March 20, 1955.

A jury, at the conclusion of a second trial, found appellant guilty of the crime of involuntary manslaughter. The trial court thereupon sentenced appellant to imprisonment in the state prison for a term not to exceed ten years. Appellant perfected an appeal from the judgment of conviction.

Appellant, on several occasions during the progress of the case, moved the trial court to quash and dismiss the amended

information. The court in all such instances denied said motion.

Appellant by his first assignment of error contends that the trial court should have granted his motion to quash and dismiss the amended information. He asserts that such information attempted to charge commission of the crime of involuntary manslaughter under the certain provision of I.C., sec. 18–4006, as amended by Idaho Sess.Laws 1949, c. 126, defining involuntary manslaughter as

"the unlawful killing of a human being, without malice. * * * *in the operation of a motor vehicle in a reckless, careless or negligent manner which produces death; * * *.*" (Amendatory matter emphasized.)

whereas, appellant asserts the repeal of such portion of the involuntary manslaughter statute by Idaho Sess.Laws 1953, c. 273, sec. 53, now designated as I.C., sec. 49–520.1.

I.C., sec. 18–4007, as amended by Idaho Sess.Laws 1949, c. 126, sec. 2, prescribes punishment for the crime of involuntary manslaughter,

"* * * by a fine of not more than $1,000.00, or by imprisonment in the state prison not exceeding ten years, or by both such fine and imprisonment. * * *."

Idaho Sess.Laws 1953, c. 273, is the Uniform Act Regulating Traffic on Highways; it contains in its title among other matters, the following:

"An Act Regulating Traffic On The Highways And Defining Certain Crimes In The Use And Operations Of Vehicles; * * * Defining Negligent Homicide And Prescribing A Penalty Therefor; * * *."

Section 53 of said Act, now designated as I.C., sec. 49–520.1, hereinafter called the negligent homicide statute, defines the crime of negligent homicide and prescribes punishment therefor as follows:

"Negligent Homicide. — (a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

"(b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one year or by fine of not more than $1,000, or by both such fine and imprisonment. * * *."

Section 192 of said Act reads in part:

"* * * all acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

■ The Uniform Act Regulating Traffic on Highways is a comprehensive statute,

legislatively intended to cover the whole field and subject matter of the operation of motor vehicles, including definitions of the several offenses growing out of the improper operation of such vehicles, prescribing penalties for those offenses, and repealing by implication all acts and parts of acts inconsistent therewith.

Repeals by implication are not favored; but if inconsistency is found to exist between the earlier and the later enactments, such that the legislature could not have intended the two statutes to be contemporaneously operative, it will be implied that the legislature intended to repeal the earlier by the later enactment. Storseth v. State, 72 Idaho 49, 236 P.2d 1004; State v. Teninty, 70 Idaho 1, 212 P.2d 412; State v. Morf, 80 Ariz. 220, 295 P.2d 842.

It appears, by enactment of the negligent homicide statute, a part of the aforesaid Act, that the legislature intended to and it did legislate anew in the field of homicide resulting from the improper operation of motor vehicles; also that by such legislation, the legislature intended to remove from the purview of the earlier involuntary manslaughter statute, such classification of homicide, and to place it within the purview of the later negligent homicide statute. It further appears that the legislature thereupon repealed the manslaughter statute, insofar as it included within its purview homicide resulting from the improper operation of motor vehicles, and that immediately thereupon, it enacted the negligent homicide statute and included thereunder the subject matter of homicide so resulting, with redefinition of the penalty therefor.

A statute providing for the repeal of all inconsistent laws is effective to accomplish such repeal. The rule is stated in 82 C.J.S., Statutes, § 285, p. 476, as follows:

"It is a common practice for the legislature, in enacting a statute, to insert a clause that all laws and parts of laws in conflict, or all acts and parts of acts inconsistent, with the statute are repealed; and such a provision indicates a legislative intent and undertaking to repeal some statutory provision * * *. In the absence of a constitutional prohibition of this method of repeal, such a clause is effective to repeal all prior general laws, or parts thereof, which are repugnant to, and inconsistent and irreconcilable with, the repealing statute, * * *."

Idaho's constitution does not appear to prohibit such method of repeal.

There appears to be no fundamental difference between the manslaughter statute and the negligent homicide statute in the definition of the so-called negligent homicide as latterly defined.

A portion of the 1949 amendment of the involuntary manslaughter statute, I.C., sec. 18–4006, under consideration here, defines the homicide as the unlawful killing of a human being without malice, in the operation of a motor vehicle in a reckless, careless, or negligent manner which produces death. The negligent homicide statute, I.C., sec. 49–520.1 defines the homicide therein referred to as the death of any person as a proximate result of an injury received by the driving of any vehicle in reckless disregard of the safety of others. In both instances the death must occur within one year, excluding the first day on which the act was done, I.C., sec. 73–109, being equivalent to a year and a day, when the day on which the act was done is included, I.C., sec. 18–4008.

Briefly stated, under the 1949 amendment to the manslaughter statute the homicide must result from the operation of a motor vehicle in a reckless, careless or negligent manner; and under the negligent homicide statute, the homicide must result from the operation of the motor vehicle in reckless disregard of the safety of others.

Fundamentally, while the two definitions differ in phraseology, they differ but little if any in meaning. Both statutes define the homicide resulting from operation of a motor vehicle in a reckless manner or in reckless disregard; and in the title of the Uniform Act Regulating Traffic on Highways, of which the negligent homicide statute is a part, the legislature indicated its intention to enact a statute defining *negligent* homicide and prescribing a penalty therefor; also the act itself prescribes that *the person who commits the homicide as* therein provided, shall be guilty of *negligent* homicide.

The legislature thereby indicated its intention to include the homicide, resulting from the negligent operation of a motor vehicle, as an offense included within the purview of, and *of equal grade as,* the homicide resulting from the operation of the motor vehicle in reckless disregard of the safety of others. For any such negligence must measure up to the statutory definition of criminal negligence and meet the definitive test of reckless disregard of consequences.

I.C., sec. 18–114 reads:

"In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal neligence."

In State v. McMahan, 57 Idaho 240, 65 P.2d 156, 162, this section of the statute is construed with particular reference to the word "negligence"; therein this Court stated:

"In order to properly construe that section, [now I.C., sec. 18–114] full force and effect must be given to the qualifying word 'criminal,' used in connection with the word 'negligence.'

"The term 'criminal negligence,' as used in that section, does not mean merely the failure to exercise ordinary care, or that degree of care which an ordinarily prudent person would exercise under like circumstances. It means gross negligence. It is such negligence as amounts to a reckless disregard of consequences and of the rights of others."

See also State v. Taylor, 59 Idaho 724, 87 P.2d 454; State v. Patterson, 60 Idaho 67, 88 P.2d 493; State v. Hintz, 61 Idaho 411, 102 P.2d 639; 65 C.J.S., Negligence, § 306, p. 1270.

There is however, a definite conflict between the involuntary manslaughter and the negligent homicide statute as to the punishment imposed.

The involuntary manslaughter statute imposes a sentence of imprisonment not exceeding ten years in the state prison. The negligent homicide statute imposes a sentence of imprisonment not exceeding one year, without designating the state prison or the county jail. The conflict between the two statutes cannot be reconciled; being so, the negligent homicide statute must govern since it is the later enactment.

The general rule applicable here is stated in 82 C.J.S., Statutes, § 303 b, p. 520, as follows:

"It is a well settled rule that, where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a different penalty for the same, or practically the same, offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished."

In State v. Holt, Mont., 194 P.2d 651, 656, appears the following statement of the rule:

"* * * a statute providing for or defining an offense created by a previous Act and providing a materially different punishment repeals the former Act. Sutherland on Statutory Construction, 3d Ed., sec. 2031; State v. Brennan, 89 Mont. 479, 300 P. 273. And the repeal is effectuated whether the punishment is reduced or increased. United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043; Norris v. Crocker, 13 How. 429, 14 L.Ed. 210; People v. Tisdale, 57 Cal. 104."

See also State v. Teninty, supra; People v. Lowell, 250 Mich. 349, 230 N.W. 202; State v. McClellan, 155 La. 37, 98 So. 748, 31 A.L.R. 527; Marks v. State, 220 Ind. 9, 40 N.E.2d 108; State v. Biddle, 6 Terry 244, 45 Del. 244, 71 A.2d 273; People v. Haydon, 106 Cal.App.2d 105, 234 P.2d 720; 50 Am. Jur., Statutes, sec. 567, p. 567.

It therefore appears that the legislature intended to, and we hold that it did, repeal the hereinafter quoted portion of I.C., sec. 18–4006 as amended by Idaho Sess.Laws 1949, c. 126, sec. 1, defining involuntary

562

manslaughter, inter alia, as the unlawful killing of a human being, "in the operation of a motor vehicle in a reckless, careless or negligent manner which produces death."

■ Respondent in its amended information, laid under the involuntary manslaughter statute, included in its charge against appellant, the unlawful driving and operation of a motor vehicle by appellant, in a reckless manner, into and against Mrs. Bunten, but without malice, as the result whereof her death occurred. We fail to discern where such charge could materially differ in meaning, though differing in phraseology from a charge against appellant if laid under the negligent homicide statute; for in the latter instance the statutory charge, of necessity would include the unlawful driving of a motor vehicle by appellant "in reckless disregard of the safety of others" into and against Mrs. Bunten as the proximate result whereof her death ensued. There is no fundamental difference between driving a motor vehicle in a reckless manner, on the one hand, and in reckless disregard, on the other hand, as the result of which act the death of a person occurs.

We cannot agree with the conclusion of the case of State v. Biddle, supra, urged by appellant as applicable herein, that where the indictment was laid under the impliedly repealed involuntary manslaughter statute, rather than under the negligent homicide statute, it charged a non-existent offense,

and therefore it must be quashed. For as hereinbefore pointed out, the information sufficiently charged the commission by appellant of the crime defined by I.C., sec. 49–520.1 and denominated as negligent homicide. We believe that the preferable reasoning, applicable to the situation here, which appears to be the majority rule, is set out in the case of State v. McClellan, 155 La. 37, 98 So. 748, 749, 31 A.L.R. 527, as follows:

"The two acts are inconsistent, the one with the other, in that the latter act makes the crime intended to be denounced a relative felony, while the former made the crime only a misdemeanor. Where two criminal statutes are repugnant as to the punishment that may be inflicted, they cannot stand together. State v. Hickman, 127 La. 442, 53 So. 680. Of course, the *defendant could not be prosecuted under the repealed statute, but, as the indictment follows the language of the later act, it is sufficient, if it is otherwise legal,* and the defendant is brought within its terms." (Emphasis supplied.)

At 42 C.J.S., Indictments and Informations, § 137, p. 1031, it is stated:

" * * * it is immaterial under what particular statute the indictment is drawn, or that there are infirmities in such statute, if the indictment is good under some other statute which is valid."

And in Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 94, 42 L.Ed. 509, appears the following statement of the rule:

> "It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some statute in force."

See also United States v. Bazzell, 7 Cir., 187 F.2d 878; United States v. Austin-Bagley Corporation, D.C.N.Y., 24 F.2d 527; United States v. Lucas, D.C.Wash., 6 F.2d 327; Taylor v. United States, 7 Cir., 2 F.2d 444; Baker v. State, 200 Ark. 688, 140 S.W.2d 1008; People v. Arthur, 1 Cal.App. 2d Supp. 768, 32 P.2d 1002.

■ It is immaterial that the amended information denominated the crime involuntary manslaughter rather than negligent homicide. The applicable rule is stated in State v. Holder, 49 Idaho 514, 290 P. 387, 388, as follows:

> "The facts constituting the offense being sufficiently stated in the information, the mere giving of an erroneous appellation to the offense is immaterial. State v. Altwatter, 29 Idaho 107, 157 P. 256; State v. Curtis, 29 Idaho 724, 161 P. 578."

Appellant's first assignment of error is without foundation. The trial court properly denied appellant's motion to quash and dismiss the amended information.

■ Appellant in support of his second assignment of error, that the trial court failed to grant him a speedy trial, cites the Idaho Constitution and the statutory law in relation to the events which transpired, while the case was pending, during the first, second and third terms of the court for the year 1955.

Idaho Constitution, Art. I, sec. 18, reads:

> "Justice to be freely and speedily administered.—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice."

I.C., sec. 19–3501, provides as follows:

> "When action may be dismissed.— The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
>
> "1. When a person has been held to answer for a public offense, if an indictment is not found against him at the next term of the court at which he is held to answer.
>
> "2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court in which the indictment is triable, after it is found."

and I.C., sec. 19–3502, reads:

"Continuance for cause.—If the defendant is not indicted or tried, as provided in the last section, and sufficient reason therefor be shown, the court may order the action to be continued from term to term, and in the meantime may discharge the defendant from custody on his own undertaking of bail for his appearance to answer the charge at the time to which the action is continued."

The first term of the Third Judicial District Court in Ada County in the year 1955 commenced January 3, 1955; the second term commenced May 2, 1955 and the third term commenced September 6, 1955.

March 23, 1955, the complaint against appellant was filed and after a preliminary hearing thereon appellant was bound over to the district court; April 21, 1955, the information was filed, charging appellant with the offense involved in this case. April 29, 1955, appellant plead not guilty to the charge and at his request the case was continued to June 6, 1955, for trial setting, on which latter date the case was set for trial on July 11, 1955.

July 7, 1955, the court granted respondent's motion to file an amended information by July 14, 1955, and the court vacated the July 11, 1955, trial setting. July 22, 1955, appellant plead not guilty to the charge of the amended information. The court then continued the case to September 6, 1955, and on that date set the case for trial September 26, 1955.

September 20, 1955, appellant moved the trial court to dismiss the action on the ground that he had not had a speedy trial in that he had not been brought to trial at the next term of court after the information was filed. The trial court denied the motion and also denied it when later renewed.

I.C., sec. 19–1420 authorizes amendment of an information at any time after a defendant pleads, in the discretion of the court, where such can be done without prejudice to his substantial rights. The amendatory matter went to the form rather than the substance of the information, and did not charge an offense other than that for which appellant had been held to answer. We are unable to discern any prejudice to appellant's substantial rights.

The trial court treated the amended information as a new information, as though the original information had been dismissed or had never existed, and the court required appellant's arraignment and plea anew. The information as such, though denominated an amended information, was filed during the second term and appellant's trial was had during the third or next following term. In the case of Schrom v. Cramer, 76 Idaho 1, 5, 275 P.2d 979, 981, this Court stated:

"All the authorities which have been called to our attention hold that the phrase 'the next term of the court', as used in the statute, excludes the term of court then current and means the next ensuing term. * * * Likewise, the information or indictment having been filed during a current term of court, the defendant must be tried during the following term of court unless good cause to the contrary be shown."

The situation here is identical in principle as was involved in the case of Schrom v. Cramer, supra; for therein, the accused was held to answer during one term of the trial court, the information was filed during the next term and the court held that the accused should be tried during the third term, absent good cause to the contrary. See also State v. Rowland, 172, Kan. 224, 239 P.2d 949, 30 A.L.R.2d 455, and Annotation, 30 A.L.R.2d 462.

■■■ Further, there is no showing except the trial court's minute of July 22, 1955, relating to the continuance from then, the second term, to September 6, 1955, the third term of court; therefore the rule is applicable, found in 14 Am.Jur., Criminal Law, sec. 137, p. 863:

" * * * In the absence of a proper record affirmatively showing to the contrary, the presumption is that the court continued the case for a presumably lawful cause. * * * "

■■■ Appellant assigns error of the trial court in failing to provide a sufficient jury panel at the commencement of the trial, which necessitated the court's order directing the sheriff to summon a special venire to complete the panel. Appellant asserts that such action deprived him of a fair trial. That assignment is grounded on appellant's written challenge to the special panel. I.C., sec. 19–2006. Appellant admits that the trial judge in the selection of the jury "kept within the letter of the applicable statutes," but through one cause or another, including the excusing of members of the panel, the entire panel present November 2, 1955, for the opening of the trial consisted of only twenty-four jurors.

The court minutes of November 2, 1955, recite preliminary proceedings had and then recite:

"It now appearing that additional jurors are necessary to complete a jury for the trial of this case, the Court ordered a special venire for ten persons from the body of this county returnable at 2 P.M. this day."

I.C., sec. 2–410 provides in part:

"Whenever jurors are not drawn and summoned to attend any court of record, or a sufficient number of jurors fail to appear, such court may, in its discretion, order a sufficient number

to be drawn and summoned to attend such court * * *."

The trial court observed the law, and therefore did not commit error in directing the special panel to be summoned.

▆▆▆▆ Respondent took exception to the challenge and the trial court sustained the exception. The exception in effect was a demurrer to the challenge. State v. Mc-Clurg, 50 Idaho 762, 300 P. 898.

Appellant urges the sufficiency of two grounds of bias alleged in the challenge, i. e., that since only twenty-four jurors were present the day the trial opened, the sheriff called "professional" jurors; also that the sheriff who summoned the special venire, though not a witness, assisted in investigating the case.

I.C., sec. 19–2010 provides that a challenge may be taken to the panel on account of any bias of the officer who summoned them which would be good ground of challenge to a juror. Neither of the two grounds are included within the purview of I.C., sec. 19–2020 as grounds of challenge for implied bias.

I.C., sec. 19–2019 defines actual bias as the existence of a state of mind which in the sound discretion of the trier, leads to the inference that the officer will not act impartially. Therefore, did appellant, by the allegations of his special challenge show actual bias?

▆▆▆▆ The conclusion of bias resting on the assertion that the sheriff called "professional" jurors, was attempted to be grounded on an affidavit alleging an investigation made some six months previously, having to do with a "report" of the manner of the sheriff in selecting special veniremen because of limited time given therefor. The affidavit then recites the affiant's belief that professional jurors were called on the special panel.

The time element recited in the affidavit, being six months in the past from the time of summoning the special panel, is remote. What may have occurred so far in the past cannot, on mere suspicion or conjecture, be treated as proof that any such a situation existed at the time of appellant's trial setting. Moreover, I.C., sec. 2–411, in part provides:

"Where there are not competent jurors enough present to form a panel, the court may direct the sheriff or other proper officer to summon a sufficient number of persons having the qualifications of jurors, to complete the panel from *the body of the county or from the bystanders,* * * *."

(Emphasis supplied.)

The trial court properly sustained the exception to such ground of challenge.

▆▆▆▆ The conclusion of bias resting on the assertion that the sheriff assisted in

investigating the facts of the case is not supported by any allegation of fact in the challenge, nor by affidavit or otherwise. Nor was the sheriff's name endorsed on the amended information, nor was he called as a witness. There being no factual showing to support such ground of challenge, there is no basis upon which it can or should be recognized or allowed. Therefore, the trial court properly sustained the exception to such ground of challenge.

Appellant next assigns error of the trial court in refusing to give appellant's requested instructions designed to submit to the jury the question of whether the conduct of Mrs. Bunten constituted an intervening proximate cause of the accident and her resulting death. That assignment requires a brief review of the evidence relating to the accident.

The accident occurred at the intersection of Idaho Street, which extends east and west, and Sixth Street, which extends north and south. The vicinities on Sixth Street immediately to the north and south of the intersection, and on Idaho Street immediately to the west of the intersection, are largely devoted to business purposes, and Idaho Street immediately to east of the intersection is used both for business and residential purposes. No traffic control signal is in place at the intersection.

Each street at and near the vicinity of the intersection is an 80-foot right of way.

The paved 44-foot mid-portion of each street, from curb to curb, is for vehicular traffic, and at the time of the accident had a center traffic line painted thereon. The remaining 18-foot portion of the right of way, on each side of the paved portion, is curb and sidewalk for pedestrian traffic. The east, west and south pedestrian lanes or crosswalks at the time of the accident were marked on the street pavement. The west crosswalk, on which the accident occurred, extending north and south across Idaho Street, from the southwest to the northwest corners of the intersection and vice versa, was 8 feet wide and enclosed within white border lines one-foot wide painted on the pavement.

There are four street lamps at the intersection, one situate at each corner.

The evidence is conflicting as to whether Mrs. Bunten and her husband, both elderly people, attempted to cross the west crosswalk to the north from the southwest corner, or to the south from the northwest corner, of the intersection.

Dr. Bunten testified that at the southwest corner of the intersection he entered Idaho Street on the crosswalk, and looking east and west the street appeared clear of traffic. He and his wife then walked north on the crosswalk within its boundaries; Mrs. Bunten was walking to the west of her husband at his left, supported by his left arm, and about a step behind him.

Dr. Bunten stated variously that he looked out for traffic while walking north to the middle of the street; also that he paid close attention until he got past the middle of the street. After he had gone across the first half of the street he stated, "I was looking to where I was going."

When about two-thirds of the way on the crosswalk to the north, the automobile, driven by appellant, struck Dr. Bunten on the inside of his left leg, when his right leg was extended forward in making a step, which caused him to be thrown to the pavement. He later ascertained that the automobile struck his wife. The injuries which she thereby sustained resulted in her death the following day.

Two other witnesses, called by the prosecution, testified that Dr. and Mrs. Bunten were crossing the crosswalk from the south to the north.

A fireman, called by the defense, testified that he was on the second floor of the two-story brick fire station, situate on the northeast corner of the intersection; that while looking out of an upstairs window, he saw an elderly couple at the northwest corner of the intersection, step off the curb to the south. His testimony then appears:

"Q. At the time that they stepped off the curb, did you notice where the automobile was, the Davidson car? A. Well they had stepped off the curb and *had proceeded across the street,* and the

lights of the Davidson car attracted my attention and that is when I seen it was about half-way through the intersection then, when I first seen it."

(Emphasis supplied.)

He then stated that the car and the pedestrians came together at a point about one-third of the way across the street to the south.

The right front end of the automobile driven by appellant struck the Buntens. The right fender was slightly buckled and the right headlight was broken.

Appellant testified that he did not see the Buntens on the crosswalk but heard a thud. Appellant, however, told a police officer, who assisted in investigating the accident, that he "just hadn't seen the Dr. and Mrs. Bunten until it was too late to stop." The headlights of the automobile were working.

Witnesses for the prosecution testified that appellant's car was driven through the intersection at an estimated speed of 30 to 35 miles per hour; 50 to 60 miles per hour; 60 miles per hour, and "at a terrific rate of speed." Appellant and another defense witness testified that the car was traveling from 25 to 35 miles per hour.

The evidence also fairly establishes that appellant was on his right-hand side, on the north half, of Idaho Street, traveling west into and through the intersection,

although one witness testified he appeared to be straddling the center line.

Ordinance No. 2227 of Boise City, pleaded in the information and proved by respondent, provides in part:

"No person shall drive any vehicle except emergency vehicles, at a greater speed than designated as follows:

\* \* \* \* \* \*

"2. In or through any intersection adjacent to a school or hospital building, 15 miles per hour.

"3. At or through any intersection within an arterial or through street, not less than 20 nor more than 30 miles per hour.

"4. At or through any intersection not mentioned in 2 or 3 of this section, 20 miles an hour. \* \* \*"

"Intersection" is defined by I.C., sec. 49–504.2 (a):

"The area embraced within the prolongation or connection of the lateral curb lines \* \* \*."

Ordinance No. 2223 of Boise City was pleaded in the information and proved by respondent. It provides in part:

"Where traffic-control signals are not in place or not in operation, the driver of a vehicle, except upon an arterial or through street, shall yield the right of way to any pedestrian crossing the street within the crosswalk. \* \* \*"

I.C., sec. 49–540.2(a) provides:

"When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway which the vehicle is traveling upon, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. \* \* \*"

"Cross walk" is defined by I.C., sec. 49–504.3:

"That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highways measured from the curbs or, \* \* \* any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

and "right of way" is defined by I.C., sec. 49–504.8 (a):

"The privilege of the immediate use of the roadway."

The trial court instructed the jury concerning the law as aforesaid; also in regard to the driving of a motor vehicle both in a careful, prudent and reasonable manner, and in reckless disregard so as to endanger life, limb or property of any person.

If Mrs. Bunten was crossing Idaho Street on the crosswalk, walking north from the southwest corner of the intersection, she was struck by the right front end of appellant's automobile when she had reached a point approximately two-thirds, or 30 feet from the south curb, across the 44-foot paved vehicular portion of Idaho Street; she had reached a point approximately 8-feet past the center line of the street.

If she was crossing Idaho Street on the crosswalk, walking south from the northwest corner of the intersection, she was struck by the right front end of said automobile when she had reached a point approximately one-third, or 15 feet from the north curb, across the paved vehicular portion of the street, or some 8 feet south and past the line of parked cars on the north side of Idaho Street to the west of the intersection.

 ██ Mrs. Bunten, walking either to the north or to the south on the crosswalk, had entered into and upon the north half of Idaho Street; she had continued thereon for a time sufficient to traverse the approximate distances aforesaid, by the time appellant's car entered the intersection, traveling west on the north half of said street, at a speed between 25 and 60 miles per hour, or between 38 and 88 feet a second, in violation of both local and statutory law. Mrs. Bunten had the right of way as a pedestrian then and there lawfully occupying such portion of the crosswalk. It became the duty of appellant to yield such right of way to her and to keep lookout in the exercise of due care for her safety, to avoid striking her, which appellant admitted he did not. A finding by the jury that appellant drove his motor vehicle at said time and place in a reckless manner and in reckless disregard of the rights and safety of Mrs. Bunten, was fully justified.

Under the facts and circumstances shown by the evidence, and in the light of the local and statutory law aforesaid, we are unable to discern wherein any conduct on the part of Mrs. Bunten constituted an intervening proximate cause of the accident which resulted in her death.

We therefore hold that the trial court did not commit error in refusing to instruct the jury on the question of whether Mrs. Bunten's conduct constituted an intervening proximate cause of the accident and her resultant death.

Appellant rightfully questions the jurisdiction of the trial court to impose the sentence of imprisonment in the state prison for the term not to exceed ten years, as prescribed for the felony of involuntary manslaughter.

Since appellant is guilty of negligent homicide and not involuntary manslaughter, the matter of the punishment by imprisonment, which the negligent homicide statute, imposes requires clarification.

■ The negligent homicide statute, I.C., sec. 49–520.1 imposes punishment by imprisonment "for not more than one year." Did the legislature, by its failure to indicate whether such offense be punishable by imprisonment in the state prison or in the county jail, intend the imprisonment to be in the county jail for a misdemeanor?

I.C., sec. 18–111 reads:

"A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor. When a crime punishable by imprisonment in the state prison is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison."

It is only when the law makes specific provision therefor, that the court may designate the crime to be a felony; and though so provided, absent such designation in the judgment, the crime shall be deemed a misdemeanor.

■■ It is therefore clear that the legislature, by not classifying negligent homicide either as a felony or as a misdemeanor, thereby intended to classify such offense as a misdemeanor. Further, the legislature not having provided that the more severe sentence be exacted as punishment for negligent homicide, i.e., imprisonment in the state prison, it thereby intended the lesser penalty therefor, i.e., imprisonment in the county jail. It therefore became the duty of the trial court to exact the penalty for the offense committed as for a deemed misdemeanor.

Appellant assigns error of the trial court in giving certain jury instructions; but appellant has not supplied authorities or argument in support thereof. Sup.Ct.Rule No. 41; Zenier v. Spokane International Ry. Co., 78 Idaho 196, 300 P.2d 494.

The judgment of the trial court of conviction of the felony of involuntary manslaughter is reversed, and the cause remanded with instructions to the trial court to enter judgment of conviction for the misdemeanor of negligent homicide and to impose a sentence of punishment accordingly. State v. Reinoehl, 70 Idaho 361, 218 P.2d 865.

572

KEETON, C. J., TAYLOR, J., and DUNLAP, District Judge, concur.

PORTER, J., not participating.

The late ANDERSON, J., sat at the hearing, but died before the Court reached its decision.

On Denial of Petition for Rehearing.

SMITH, Justice.

The allegations contained in the information of the commission of unlawful acts in violation of certain statutory law and ordinances may be regarded as allegations of fact out of which the the reckless disregard, and the negligence interpreted as reckless disregard, I.C. sec. 18–114; State v. McMahan, 57 Idaho 240, 65 P.2d 156, arises, which is the basis of the charge. Those allegations in that sense may properly be alleged and proved; and though they may be characteristic of a charge of manslaughter, they cannot have the effect of changing the charge from negligent homicide to manslaughter. Moreover, those allegations were not prejudicial to appellant because the proof thereof did not and could not increase the penalty beyond that fixed by the negligent homicide statute.

The petition for rehearing is denied.

KEETON, C. J., TAYLOR, J., and DUNLAP, District Judge, concur.